MICHAEL J. WHITE, as Administrator, etc., of JOHN WHITE, Deceased, Respondent, *v.* THE ALBANY RAILWAY, Appellant.

*Negligence — a street car running at the rate of twelve miles an hour as permitted by a city ordinance — failure of a motorman to stop a car within two seconds after seeing a boy on the track.*

A street railroad car, proceeding at the rate of twelve miles an hour at a place where it is permitted to do so by a city ordinance, is not running at an excessive rate of speed, such as will warrant a jury in imputing negligence to the company on account of its speed alone.

Where a boy attempts to run across the track of an electric street railroad, and
the motorman of an approaching car has but the two seconds intervening
between the time when the boy crosses the first rail and the time when he is
struck by the car within which to see the boy, realize the danger and stop the
car, his failure to stop the car and save the boy within that space of time does
not warrant an inference of negligence on his part.

APPEAL by the defendant, The Albany Railway, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered in the
office of the clerk of the county of Albany on the 14th day of
March, 1898, upon the verdict of a jury for $2,000, and also from
an order entered in said clerk's office on the 14th day of March,
1898, denying the defendant's motion for a new trial made upon the
minutes.

This action is brought by the plaintiff, as administrator of the
goods, chattels and credits of his infant son, against the defendant
for negligently causing his death. The plaintiff recovered a verdict
at the Trial Term, and from the judgment entered thereon and
from an order denying defendant's motion for a new trial this appeal
is taken.

*Simon W. Rosendale*, for the appellant.

*P. C. Dugan*, for the respondent.

PARKER, P. J.:

The plaintiff's claim that the death of his son was caused by the
negligence of the defendant is based upon two alleged facts, viz.:
Excessive speed of the car, and negligent omission of the motor-
man to stop the car before striking the child.

As to the speed of the car, the city ordinance permitted a speed
of twelve miles an hour at the place where the accident happened,
and if the car did not exceed that speed, negligence cannot be
imputed to the defendant on account of its speed alone. In that
case, it was not running in violation of any law or ordinance, and
that rate of speed, in itself, and under the circumstances of this
case, was not so excessive as to warrant a jury in holding it
negligent.

The trial judge, at defendant's request, charged the jury that
there was no evidence that the speed of the car exceeded twelve
miles an hour. To this charge there was no exception taken, and

in my judgment the great weight of evidence is that it was not exceeding that rate of speed.

The fact to which the trial judge called the attention of the jury in that connection, that Mulligan, an uncle of the deceased and plaintiff's witness, testified that he was following the car when it struck the boy, with his horses on a walk, and that he had gone 175 feet while the car went 225 feet, is strong evidence upon that question, and, taken in connection with that of defendant's witnesses, places it beyond doubt that the speed was within the required limit of twelve miles an hour.

But whether it was or not, we must suppose that the jury accepted that instruction and have based their verdict upon a state of facts which assumes such to be the case. And in determining whether their verdict can be sustained, we must consider the case from the same standpoint.

Assuming then that the speed does not indicate negligence on defendant's part, and did not exceed twelve miles an hour, the remaining question is, whether it has been shown that the motorman omitted to do anything which he reasonably ought to have done, and which in the exercise of the requisite care he could have done, to prevent the car from hitting the boy.

The tracks of the defendant's railway run north and south through the middle of Broadway. The car which struck the deceased was going north on the easterly track, and the deceased was run over while attempting to cross from the east to the west side of the street.

The witness Hayes gives the situation upon which the plaintiff relies to establish negligence against the motorman substantially as follows: He was walking up Broadway on the east side, and when he was at the southeast corner of Manor street the car flew by him and the conductor was on the walking board "hollering." (That corner is 120 feet south of where the boy was struck.) At that moment he saw the boy near the east rail going directly west, as if to cross the track. When the car had got to Blakeslee's crossing — which is 71 feet south of where the boy was struck — the boy had passed onto the east rail. From this point he watched him proceed west till he had nearly reached the west rail, when the car struck him.

That all the time the boy was in plain view of himself and of the motorman. He also says the boy was going straight across the tracks, and at a lively gait for a little boy. Other of the plaintiff's witnesses say that the boy was running as "fast as his little legs could carry him." The witness also testified that no apparent effort was made to stop the car until the boy was struck.

On these facts the plaintiff claims that the boy entered on the track in plain view of the motorman and 71 feet ahead of the car, and that the conductor shouted out a warning as the boy was about to enter on the track and as far away as 120 feet; that the motorman was, therefore, clearly negligent in not seeing the boy and stopping the car before it struck him.

It is to be noticed that when the boy passed upon the east rail he was running straight across the track, and he continued at the same speed and in the same direction until he was hit. The rails were four and seventy-two one-hundreths feet apart, and hence he had passed a distance of four feet — "very near the west rail" — while the car had traveled the seventy-one feet from Blakeslee's crossing. That is, the car traveled more than seventeen times as fast as the boy.

There is no evidence as to just how fast the boy was going, but he could run that four feet in four or five steps at most, and it would be entirely consistent with human experience to assume that he traveled at the rate of four miles an hour. At that rate the car must have traveled at the rate of over sixty-eight miles an hour to strike him as it did. And if we assume that the boy was running at the rate of only two miles an hour, the car must have run at the rate of over thirty-four miles an hour. That the car was traveling at either of these rates is utterly incredible. The great weight of evidence in the case, as well as the practical concession of the plaintiff above alluded to, forbids that conclusion, and a statement that requires us to believe that the car was running as fast as thirty-four miles an hour must be at once rejected. We cannot accept the statement of plaintiff's witnesses as to the relative position of the car and the boy when he entered upon the track. The car could not have been seventy-one feet from him, and the motorman did not have all that distance in which to stop the car.

If their statement is not to be credited, then the jury were com-

pelled to guess at the situation, or accept the version of the defendant's witnesses as to the circumstances under which the boy was hit.

The statement of both the motorman and the conductor, although they on cross-examination are somewhat inconsistent as to their estimate of distances, is clear to the effect that the boy darted suddenly on to the track just ahead of the car.  The motorman testified that when he first saw him, he was running along diagonally by the car, and as quick as "a shot," like the snapping of a finger, he ran and fell over the east rail; that he instantly let down the fender and applied the brakes, but that the boy was too near the car to be saved.

Under such circumstances negligence could not justly be charged against the motorman.

Nor can it be said that he was negligent in not seeing the boy before he got upon the track.  Undoubtedly it was the duty of the motorman to use all the means in his power to prevent the car from striking the boy, and to begin the use of such means as soon as the danger of hitting him became apparent.  But he could not justly be charged with negligence in not stopping or beginning to stop the car, until it became reasonably apparent to him that the boy was in peril unless he did so.  (*Stabenau* v. *Atlantic Ave. R. R. Co.,* 155 N. Y. 511.)  And such is the measure of responsibility we must apply to the motorman in considering this case.

The motorman's attention is required first to the track to see that it is clear and to the crosswalks where people are expected to pass over the track or to get aboard the car.  In this case they were just about entering a switch where a down car might be passed, and a crosswalk was about 124 feet ahead of them, also a railroad crossing at grade where the car must come to a full stop.  Now, all these demanded the attention of the motorman.  They were points on the track and which it was his first duty to watch.  And if, until he was close upon him, he had omitted to notice a boy on the street and to apprehend that he was about to cross the track and so incur a peril, it surely ought not, under the rule above stated, to be charged as a negligent omission against him.  It must be remembered that, although his car was lighted up and plainly visible, it was already dusky, and the view ahead of him on the track demanded more than ordinary attention.

Nor does the plaintiff charge negligence against him on that account. His complaint is based on the theory that the motorman, after the boy passed on to the track, made no effort for a distance of seventy-one feet to stop the car. If that claim could be credited, it would present another question.

Moreover, if we concede that the boy ran upon the track and across it nearly to the west rail, just as the witness Hayes states it, it is plain that the car actually ran the distance it was south of the boy when he entered upon the east rail — whatever that distance may have been — while the boy was running about four feet. If we assume that the boy was going only two miles an hour, which is certainly most favorable to the plaintiff, he would have gone that four feet in less than two seconds. That is, the motorman had less than two seconds to see the boy, realize the danger and begin to stop the car. Such a situation is not very different from that stated by the motorman himself. Two seconds is a short time to comprehend a situation of danger and avoid it, and an inference that the motorman was negligent in not stopping the car and saving the boy in that space of time should not prevail. Although the witness Hayes claims that no effort was made to stop until the boy was struck, because he saw no sparks fly until then, it is plain that within the two seconds the motorman may — as he says he did — have lowered the fender and started to apply the brakes without any of that effort being apparent to Hayes at the distance he was from the car.

It must be remembered that there is no proof that the motorman did see the boy or hear any warning concerning him before the time when he says he saw him.

The negligence claimed rests entirely in inferences to be drawn from the situation proven, and the burden is with the plaintiff to prove that situation by a preponderance of evidence. And if, from the situation which the plaintiff's evidence discloses, it is as reasonable to infer that the motorman was not negligent as to infer that he was, the plaintiff has failed to establish his case. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90; *Cadwell* v. *Arnheim*, 152 id. 182, 190.)

On the whole case it seems as if the jury must have misapprehended the situation. They have charged negligence against the motorman when neither justice nor an intelligent appreciation of his

duties and the possibilities of the case warrant it. It is a case well calculated to inspire their sympathies, but, as it appears from this record, it is not one where the death was caused by the negligence of defendant's agents.

Without discussing the very serious question whether contributory negligence causing his death should not be charged against the boy, I conclude that, for the reasons above stated, the verdict of the jury was wrong, and the judgment entered thereon should be reversed.

All concurred, except HERRICK, J., not sitting.

Judgment reversed, new trial granted, costs to abide the event.