TITO BINI, Appellant, *v.* JOHN SMITH, Respondent.

36 463
s161 120

*Lloyds fire insurance policy — authority of an agent — waiver of a provision that he should not be deemed the agent of the insurer — the cost of property is some evidence of its value — proofs of loss in which the cost is stated.*

In an action upon a Lloyds policy of fire insurance providing "In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of the underwriters," it appeared that the policy in question, duly executed, was handed by the attorney and manager of the underwriters to one Alden, who had been in the habit of soliciting insurance and placing it with the underwriters through their attorney and manager, and between whom and Alden a running account was kept; that Alden delivered the policy to the plaintiff and received the premium, the amount of which was charged against Alden upon the account of the attorney and manager, and that the latter did not insist upon payment of the premium by Alden until some two months and a half after the policy had been issued. The attorney and manager testified that it was a custom of insurance companies to extend credit to brokers for premiums collected by them; that the credit was given to the broker and not to the assured, and that this custom was followed in the present case.

*Held,* that the facts were sufficient to constitute a waiver of the provision of the policy as to the agency of Alden, and that he was the agent of the underwriters for the specific purpose of delivering the policy which had been intrusted to him and the collection of the premium from the plaintiff.

In such an action the cost of the property insured is some evidence of its value.

*Semble,* that proofs of loss containing a statement as to the cost of the articles burned are not evidence of the value of the property at the time of the fire, but may be used to refresh the memory of a witness testifying to the cost.

APPEAL by the plaintiff, Tito Bini, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Richmond on the 30th day of March, 1898, upon the decision of the court, dismissing the complaint upon the merits, rendered after a trial before the court, without a jury, of an issue of fact properly triable before a jury.

*William W. Niles, Jr.,* for the appellant.

*Willis B. Dowd,* for the respondent.

GOODRICH, P. J.:

The action was brought to recover an aliquot part of $1,000 on a Lloyds policy of insurance for $1,000 issued to the plaintiff upon a

hotel in Southfield in the county of Richmond, and certain personal property therein, each of the subscribers underwriting $76.92. The defense was based chiefly upon the ground that the policy was issued without the authority of the defendant and without consideration, that is, payment of premium; and that about four months after its issue it was duly canceled in accordance with its terms. The parties stipulated for a trial before a justice of this court without a jury, and after the proofs of the parties had been submitted the justice rendered a decision dismissing the complaint upon the merits, and from the judgment entered thereon the plaintiff appeals.

The learned justice gave as reasons for his decision that the plaintiff paid the premium to one Alden, an insurance broker, instead of paying the same to Warbrick, the agent and manager of the underwriters, and that Alden was the agent of the plaintiff and not of the defendant. He also found that there was no proof of the value of the property and that there was other insurance.

The first and crucial question relates to the payment of the premium. The policy contains a clause as follows : " In any matter relating to this insurance no person unless duly authorized in writing shall be deemed the agent of the underwriters." There is no doubt that this provision may be waived by the action of the underwriters and their general manager.

In *Tooker* v. *Security Trust Co.* (26 App. Div. 372) we held that the condition of a policy of insurance as to the payment of the premium in actual cash was waived by the company, under the facts in that case, although the policy contained a provision requiring the payment of the premiums in advance.

In *Cahill* v. *Andes Ins. Co.* (5 Biss. 211) one Doud, an insurance solicitor who was not in the employ of the company, had procured the privilege of placing insurance and had secured from the plaintiff a risk, receiving a premium which he never paid to the company. He delivered the policy to the plaintiff upon the receipt of the premium. The court held that inasmuch as the company issued the policy and intrusted it to Doud, he became the representative of the company, as between the insurer and insured, for the specific transaction, that is, for the delivery of the policy and receipt of the premium.

The evidence in the case at bar shows that Alden was an insur-

ance broker, and had been in the habit of soliciting insurance and placing it with the present underwriters through Warbrick, their attorney and manager; that a running account was kept between Alden and Warbrick; that the policy was issued on January 4, 1896, countersigned by Warbrick as attorney and manager and handed to Alden, who delivered it to the plaintiff and received the premium; that there was an account against Alden on the books of Warbrick, in which Alden was charged with the amounts of the plaintiff's premiums, and that it was not until May that Warbrick insisted upon the payment of the premium by Alden. On March eighteenth Warbrick wrote Alden a letter, in which he said : " You have collected certain premiums belonging to us, where you are entitled to commission consideration, and through misfortune or otherwise you have been called upon to use these funds, not your own. That in lieu of the actual cash, for settlement you have so far compromised that you have given notes, as also extension notes, and these extension notes you cannot meet. Now, practically, there should have been no notes whatever or any time consideration, and I look upon it and the transaction in question as taking advantage of our good feeling and natural kindness to you. You should meet these obligations to us, provided you had *part with every dollar in the world, for the simple reason we have trusted to your good faith and your purpose to do right and refund that which was not your own. I can only say further that I shall be held accountable personally for the balance of your account. My committee say that I had the option to cancel policies, and that I preferred to accept time loans for the premiums, which really I had no right to do, without accepting the responsibility, and I accept the ultimatum. There is no desire on my part to press you for payment of the notes other than our old friendship will warrant; but as you can view the situation just as well as the writer, and that the writer is in no position in these dull times either to advance premiums or be responsible for any unsettled account, I must call upon every one who are* in arrears to settle up, and you are among the number."

Warbrick also testified as follows : " Q. Is it not the custom of insurance companies to extend a credit to brokers ? A. That is a

*Sic.

SECOND DEPARTMENT, JANUARY TERM, 1899. [Vol. 36.

custom in insurance business. Yes, sir, for premiums due upon policies issued. We simply did in this case with Alden as was the custom with other brokers. There are a thousand cases of the same kind. Q. The credit was not to the assured, but to the broker? A. To the broker. * * * Q. (By the Court): The number appearing after the name Tito Bini on the page under date of January 4, 1896, 3082, is the same number as the policy in suit, isn't it? A. Yes, sir. Q. And the debit there as against Alden was for the premium for this policy Exhibit 1? A. No debit at all; it is marked off canceled. Q. It had been previously debited as against Alden? A. All charged against Alden. * * * Q. Isn't it a universal habit in insurance, as soon as you get notice from a broker he has placed insurance, to make a memorandum of the policy, so as to keep track of it? A. I could not do business otherwise. It is a fact we enter it right up against the broker's account. And when he collects the premium and turns it in we merely mark it off on the book."

We think these facts are sufficient to constitute a waiver of the provision of the policy as to the agency of Alden, and that he was the agent of the underwriters for the specific purpose of delivering the policy which had been intrusted to him and the collecting of the premium from the plaintiff.

The defendant also contends that there was no proof of the value of the property destroyed. There was evidence that the building had cost more than $7,000, and that the household furniture cost $639. The question was then asked: "Q. What did the bar and barroom fixtures cost you? If you cannot recollect, look at that statement and say. Now first the stock or liquors. The Court: Exhibit your proofs of loss. The proofs of loss are offered in evidence, marked Exhibit 4."

It is well settled that the cost of property is some evidence of its value. (*Hangen* v. *Hachemeister*, 114 N. Y. 566; *Smith* v. *Griffith*, 3 Hill, 333; *Hawver* v. *Bell*, 141 N. Y. 140.) Apparently the court accepted the proofs of loss, there being no objection made upon this specific point, as evidence of the value of the property at the time of the fire. The question is now raised that the proofs of loss are not evidence of the value of the property at the time of the fire. They are not evidence for that purpose, and we do not

understand that the appellant makes any such claim or that the proofs of loss were introduced for that purpose. The policy required the assured in case of fire to furnish the underwriters, as part of the proofs of loss, a statement of the " quantity and cost of each article " and the·" cash value of each item ; " and there was evidence that proofs of loss had been duly furnished, which were returned by the company, solely upon the ground that the premium had not been paid, and that the policy had been canceled for that reason. Such a specific objection waived all other objections to the proofs of loss. (*Francis* v. *Ocean Ins. Co.*, 6 Cow. 404.)

Only a summary of the proofs of loss is printed in the record, but it appears by this that they were " the customary printed proof of loss, * * * containing a statement of * * * the cash value of the property, $5,741.50." The witness was asked as to the cost of the bar and barroom fixtures and the stock of liquors·; and his counsel said : " If you cannot recollect, look at that statement (proofs of loss) and say." The court directed the plaintiff to exhibit the proofs of loss, and they were offered and received in evidence without objection or exception. It does not appear that the witness answered the question as to cost otherwise than by putting the statement in evidence. Clearly, the evidence was competent, not to afford proof of cost or value, but to refresh the memory of the witness, and the receipt in evidence of the proofs of loss was practically equivalent to an answer that the cost was the amount stated in them. This is the only deduction which can be made, viz., that the proofs were understood by court and counsel to state the cost of the articles, and the putting of the proofs in evidence was the answer of the witness that the cost was that named therein.

We think, therefore, that there was evidence of value sufficient to cover the amount insured.

The dismissal of the complaint on its merits was error, and the judgment must be reversed and a new trial granted.

All concurred.

Judgment reversed and new trial granted, costs to abide the event.