HOFFMAN v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. December 15, 1899.)

1. PLEADING—AMENDMENT AT TRIAL.

In an action for personal injuries to a passenger through the sudden stoppage of a street car, where the specific negligence alleged was an improperly constructed and operated switch, it was an abuse of discretion to allow an amendment on the trial, to conform to the proof, by changing the negligence alleged to negligence in the operation of the car, without giving defendant an opportunity to prepare to try the new issue.

2. CARRIERS—INJURY TO PASSENGER—EVIDENCE.

Evidence that a street car moving along a crowded street at the rate of about two miles an hour was suddenly stopped, throwing the plaintiff from her seat in the car to the floor, and that the gripman in charge did not stop it, is insufficient to support a finding of negligence in the operation of the car.

3. SAME—INSTRUCTION.

Where there was no evidence that the track where the accident occurred was defective, it was reversible error to charge, in effect, that the burden was on the defendant to show that the accident causing the injury did not occur by reason of its negligence.

Appeal from trial term, New York county.

Action by Minnie Hoffman, by Louis Cohen, her guardian ad litem, against the Third Avenue Railroad Company. From a judgment entered on a verdict for plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Herbert R. Limburger, for appellant.
Louis Cohen, for respondent.

INGRAHAM, J. The complaint, after alleging the incorporation of the defendant as a common carrier, set forth that "for the purpose of receiving from and delivering to the general post office in the city of New York the said mail cars, the defendant constructed side tracks running off and from the main tracks of the defendant on Park Row, near Mail street, to the general post office, and constructed switches and frogs to connect said side tracks with the aforesaid main tracks on said Park Row"; that "said side tracks are connected with defendant's main tracks on said Park Row by a movable switch or frog, constructed, operated, controlled, and owned by the defendant, and forms a part of defendant's roadbed for operating and conducting the said railroad"; that "on the 18th day of May, 1898, and while the plaintiff was upon the said car, and while said car was passing with great speed over the switch or frog so owned and controlled by the defendant, and by reason of said frog or switch being misplaced, said car ran over and along the side track from the main track towards the general post office, the grip of said car being attached to the cable, and the cable drawing and pulling in an opposite direction, viz. towards the southerly terminus of the road, by reason of which said car was suddenly jostled and jerked, suddenly and violently throwing plaintiff from the seat in said car,"—and demanded judgment for damages for injuries sustained by the plaintiff in consequence. There

is no allegation in the complaint that the gripman or other employés operating the car were negligent, or that the car was negligently operated. The cause of action thus alleged, and which the defendant was called upon to meet at the trial, was one based upon a frog or switch being misplaced, as a result of which the car was suddenly stopped, and the plaintiff was injured. From the evidence introduced by the plaintiff, it appeared that the accident did not occur at the point designated in the complaint, or upon the switch or side track therein specified. Counsel for the plaintiff then moved to amend the complaint so as to charge that this accident happened about 100 feet north of the point specified in the complaint. The defendant then asked leave to withdraw a juror, stating to the court:

"Now, as I understand it, counsel has proved an accident 250 feet away, and is calling into question another switch; and that being so, sir, I desire to withdraw a juror, because I think I ought to have time to prepare with respect to that."

In answer to this request, the court stated:

That it appeared from the evidence that the accident did not occur by any defect in the track or the switch. "If the accident occurred by the negligence of the employés of the defendant, it was by a sudden jerk of the car; and it is not very material whether it was upon the switch, or upon the main track. It is only 250 feet distant. If it was a defective switch or defective track, then I could see it would be quite material you should have time to get ready to meet it; but that is not in issue."

Counsel for the plaintiff then called attention to the pleadings which do refer to the switch, and said:

"There was negligence with respect to that switch, namely, the switch at Mail street, 250 feet from the point where the officer says the accident occurred. If, however, your honor is going to hold this plaintiff to proof of the negligence of the gripman and the conductor operating this car, then that is quite another matter."

To that the court replied:

"That is the issue here, so far as it appears to me. There was no defect in the tracks at all. It was simply the negligence, if there was negligence, of the gripman of this car."

To that ruling the defendant excepted, and the taking of the plaintiff's evidence then proceeded. As before stated, the complaint distinctly alleged as a cause of the accident that the said frog or switch was misplaced, by reason of which said car was suddenly jostled and jerked, suddenly and violently throwing the plaintiff from the seat in said car. There was no issue presented by the pleadings as to the negligence of the defendant's employés in operating the car, and the defendant was not called upon to meet such an issue. Subsequently, at the close of all the testimony, upon motion of the plaintiff the court ordered the pleadings to be amended to conform to the proof, to which the defendant excepted, and renewed its application to be allowed to withdraw a juror, which application the court refused. Although this application was not technically correct, as the defendant had no right to make such an application upon a trial of the action before a jury, it presented to the court the objection to granting an amendment to the pleadings which changed substantially the ground upon which the plaintiff asked for a recovery, and presented

an entirely new issue as to the nature of the fact from which the plaintiff asked an inference of negligence. Here the plaintiff had alleged that the specification of negligence was an improperly constructed and operated switch, with no allegation of negligence in the operation or management of the car; and an application to amend the pleading, changing the negligence thus alleged in the complaint to a claim to recover because of negligence in the operation of the car, should not have been granted, upon motion, upon the trial, without requiring the service of an amended complaint, which would allow the defendant to answer, and allow it an opportunity to properly prepare for trial. Thus assuming that the court had the power to order such an amendment upon the trial, we think it was an abuse of discretion to thus change the pleadings, so as to present an entirely new issue to be tried, without giving the defendant an opportunity to properly prepare to try such new issue.

But, however, assuming that the pleadings had been properly amended, so that the issue presented was that stated by the court, namely, that the question was simply one of negligence on the part of the gripman of the car, we think the defendant's motion to dismiss the complaint upon the ground that there was no evidence to justify a finding of the jury that the gripman was negligent should have been granted. There was nothing to show the cause of the stoppage of the car. One of the witnesses called by the plaintiff testified:

That the car was going slowly, and then stopped. "I see this car coming down Park Row, coming at a very slow rate of speed, and stop all of a sudden. I heard a smash of glass, and I saw the officer going across the street."

Upon cross-examination the witness testified:

That the car was going slowly, and then stopped. "At the time previous it was going, I should judge, about two miles—two and a half miles—an hour; no faster than a person walking would walk, because the crowds around the bulletin board, I believe, had something to do with their going slow. There was a big crowd around there. * * * The gripman was on the front of his car."

The witness was then asked:

"Did you see whether it was any fault of the gripman?" to which he answered: "No, sir; it was not. Q. Did the gripman do anything to stop that car? A. No, sir. Q. So far as you saw, was there anything that the gripman did which caused this injury? A. Not to my knowledge. I didn't see him do anything."

The witness further testified: That the gripman was looking ahead. "He had his hand on the lever, I suppose."

The policeman who was stationed in the immediate neighborhood testified: That he was standing about 9 or 10 feet from the railroad track. That the car got abreast of him, made quite a noise, and stopped suddenly,—"should say, a distance of fifteen or twenty inches. I heard the glass smash in the front of the car." That there were large crowds gathered about, looking at the bulletin boards. That the people got out of the way of the car as it came through the crowd.

This was all the evidence offered by the plaintiff as to the nature of the accident. This would not justify a finding of negligence of the gripman, unless we can say that the stoppage of a street car, proceed-

ing at a pace not faster than a man could walk, is evidence of such negligence, or evidence from which a jury could infer negligence. What stopped the car does not appear. There was no evidence that the track or switch in this neighborhood was out of order; and it is as reasonable to suppose that the jolting or the stopping of the car was caused by some obstacle on the track, as to ascribe it to any other reason. Yet there is nothing to show that the defendant would be liable for such an accident. Plaintiff proved that the gripman did nothing to stop the car. The rule applied to steam railroads, that where trains running at a great rate of speed leave the track, and passengers are injured, presents a question which calls for an explanation from the defendant, has never been applied to street cars in a city, proceeding at a slow pace. In many cases the nature of the accident is of itself evidence of negligence. But because a car, going at a rate that a man can walk, suddenly comes to a stop upon a crowded street, when it affirmatively appears that the gripman who controlled the car had nothing to do with stopping it, presents an entirely different case. The general rule is stated in Seybolt v. Railroad Co., 95 N. Y. 562, as follows:

"That in an action by a passenger against a carrier for negligence, where the plaintiff has shown a situation which could not have been produced except by the operation of abnormal causes, the burden then rests upon the defendant to prove that the injury was not caused without its fault."

But in this case such a situation was not shown. It is impossible to say what act of this gripman could have prevented the stopping of this car under the circumstances, or what he could have done which he did not do to protect the plaintiff. The defendant's employés were at their posts, attending to their duty. The car was proceeding at a slow pace through a crowd, when, for some reason absolutely unexplained, the car stopped. We are not prepared to say that in every case where a passenger in a street-railroad car, without apparent cause, is injured, there is a presumption of negligence. This conclusion is sustained by several recent cases in this court. Black v. Railroad Co., 22 App. Div. 629, 48 N. Y. Supp. 1100; Nelson v. Railroad Co., 25 App. Div. 535, 50 N. Y. Supp. 63.

At the end of the charge, plaintiff's counsel asked the court to charge that, from the circumstances of the case, the burden of proof shifted upon the defendant. The court answered:

"It is the duty of every common carrier to transport its passengers safely to the place of destination, and, if an accident occurs, the plaintiff, by showing that fact, and that she was injured by such accident, then the burden of proof shifts to the defendant, who is required to satisfy the jury that it did not occur by reason of any negligence on the part of the defendant or any of its employés."

And to that the defendant excepted.

We think this charge was erroneous. It is not every accident that happens to a passenger which calls upon the common carrier to satisfy the jury that it did not occur by reason of the negligence of the defendant or of its employés; and it was this error that seems to have prevailed all through the trial of the case, to which we have called attention. This remark, as applied to the facts of this case,

was clearly misleading, and calculated to do serious injury to the defendant. A situation may exist from which the jury could infer negligence, and which, unexplained, would justify such an inference, but still in all cases the burden rests upon the party alleging the affirmative; and, to entitle the plaintiff to recover, the jury must be satisfied that the injury was caused by the negligence of the defendant, although in determining that question it can consider the nature of the accident, coupled with the fact of the defendant's control of its cars, rails, and roadbed. But the situation in this case presented no such question. These cars ran in a public street, over which the defendant had no control. It was bound to keep its tracks in order, but there was no evidence to show that it failed to perform this duty; and there is nothing in the fact of the stoppage of the car, under the circumstances, from which an inference of negligence can be inferred.

We think, therefore, that the case was improperly submitted to the jury, and that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.