**Jacob F. BOSMA d/b/a Chino Livestock Commission Company and Yardage, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

No. 83–7069.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1983.

Decided July 25, 1984.

Rehearing Denied Feb. 28, 1985.

---

1. The Honorable Elsijane Trimble Roy, United States District Judge for the Eastern and Western Districts of Arkansas.

James Craig, Clayson, Mann, Arend & Yaeger, Corona, Cal., for petitioner.

Virginia Strasser, U.S. Dept. of Agriculture, Washington, D.C., for respondent.

Before HUG and FLETCHER, Circuit Judges, and REDDEN,* District Judge.

* Hon. James A. Redden, United States District Judge for the District of Oregon, sitting by desig-    nation.

FLETCHER, Circuit Judge:

Bosma petitions for review of an order of the Judicial Officer (J.O.) of the Department of Agriculture finding Bosma violated the Packers and Stockyards Act and assessing a civil penalty of $10,000.

Bosma is a market agent operating as "Chino Livestock Commission Company and Yardage." He deals in cows which have been consigned for sale by dairy farmers because they are not suitable for dairy operations. He sells the cows to packers for slaughter and receives a commission from the sellers.

A small percentage of the cows Bosma sold on consignment were sick or "distressed." Purchasers of such cows ran a risk that they might die before slaughter or be condemned by government inspectors after slaughter, making them worthless. Packers therefore preferred to buy such cows "subject," that is, subject to passing inspection. Bosma's consignors, on the other hand, preferred to sell their cows for a "live price," so that they would be paid something regardless of whether the animal passed inspection.

During the time when the alleged violations occurred, only one packer in Bosma's area would purchase the sick or distressed cows, and it offered a very low price. Because Bosma was not satisfied with the price offered, he made arrangements to sell the cows "subject" to a Los Angeles packer, Shamrock. Bosma bought outright over 500 sick or distressed cows himself, giving his consignors a higher "live" price than anyone else offered. He then had the cows slaughtered, sold the carcasses to Shamrock "subject," at a higher price, taking the risk that some would be condemned.

Although many of the cows Bosma bought were subsequently condemned, about 80% passed inspection. Bosma made on the average about $100 a head over the price he paid the consignors for the cows. In addition, he charged the consignors a commission of $7.50 a head. Bosma did not routinely inform his consignors that he was buying some of their cows himself. On the accounts of sale he gave them he listed the purchaser as "Shamrock."

The Department of Agriculture charged Bosma with purchasing consigned animals for speculation in violation of 7 U.S.C. § 208 (1982)[1] (prohibiting unjust and unreasonable practices by market agents), 7 U.S.C. § 213 (1982)[2] (prohibiting unfair and deceptive practices) and 9 C.F.R. § 201.57 (1982) (prohibiting market agents from purchasing consigned livestock for speculative purposes), 9 C.F.R. § 201.59 (1982) (requiring an agent to remit to the consignor profits on livestock the agent purchases on his own account and resells at a higher price the same day), and 9 C.F.R. § 201.60(a) (1982) (prohibiting an agent from operating in a manner whereby it shares in the profits from the resale of consigned livestock). It also charged Bosma with failing to keep accurate records because his accounts of sale and purchase invoices did not show the correct name of the purchaser, in violation of 7 U.S.C. §§ 208, 213, and 221 (1982)[3] (requiring market agents to

1. It shall be the duty of every stockyard owner and market agency to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services, and every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful.
   7 U.S.C. § 208(a) (1982).

2. (a) It shall be unlawful for any ... market agency ... to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with the ... selling on a commission basis ... of livestock.

(b) ... the Secretary after notice and full hearing may make an order that [one who is violating this section] shall cease and desist from continuing such violation .... The Secretary may also assess a civil penalty of not more than $10,000 for each such violation.
   7 U.S.C. § 213 (1982).

3. Every ... market agency ... shall keep such accounts, records, and memoranda as fully and correctly disclose all transactions involved in his business .... Whenever the Secretary finds that the accounts, records, and memoranda of any such person do not fully and correctly disclose all transactions ... the Secretary may prescribe the manner and form

keep records which fully and correctly disclose all transactions), 9 C.F.R. § 201.43(a) (1982) (requiring market agents to include on accounts of sale the name of the purchaser), and 9 C.F.R. § 201.59 (1982) (requiring a market agency that purchases out of consignment to show its own name as purchaser on accounts of sale).

The Administrative Law Judge ("ALJ") who heard the case concluded that Bosma's purchases out of consignment were not improper speculation, but were market support purchases not prohibited by the Act. She found that Bosma had been protecting his consignors' interests by purchasing the cows himself when he could not obtain a reasonable "live" price from the packers. The ALJ gave weight to the fact that all of the consignors who testified said they were satisfied with Bosma's services.

The ALJ found that Bosma had violated section 221 by failing to keep accurate accounts and records, and she ordered him to keep proper records. She found no evidence of unfair or deceptive practices and therefore refused to suspend Bosma as a registered agent or assess the $15,000 civil penalty requested by the Department.

The Department appealed to the J.O., who affirmed the ALJ's finding that Bosma's purchases out of consignment were made for market support purposes. However, he also concluded that Bosma's listing of "Shamrock" as the purchaser of the cows was itself a deceptive practice in violation of section 213(a), which, unlike section 221, provides for civil penalties. Rejecting the ALJ's conclusion that there was "no evidence of deceit or nondisclosure," the J.O. found that Bosma "knowingly and intentionally violated the regulatory [bookkeeping] requirements in order to keep his consignors from knowing he was the purchaser of their livestock." The J.O. determined that this was a serious violation and assessed a $10,000 civil penalty.

## I. Violation of Section 213.

Bosma does not contest the Secretary's authority to declare his record-keeping unlawful under section 221 or to order him to keep appropriate records in the future. He does not contest the J.O.'s authority to impose the $10,000 fine, arguing that the Department has not shown that these record-keeping violations are a deceptive practice in violation of section 213, the only section of the Act which provides civil penalties.

### A. Standard of Review.

Bosma challenges the J.O.'s reversal of the ALJ's finding that there was no evidence of deceit or nondisclosure, or of any harm of the sort the Act was designed to prevent. The Department has announced a policy of not reversing an ALJ's factual findings unless the record compels such reversal. See In re Hampshire Open-Air Market, Inc., 41 Agric.Dec. 955, 957 (1982). Bosma argues that the J.O.'s reasons for reversing the ALJ's factual findings are insufficient and inconsistent and that he has improperly refused to follow his own standard without explanation.

We must uphold the J.O.'s factual findings if they are supported by substantial evidence, based on our reading of the entire record. Corona Livestock Auction, Inc. v. United States Department of Agriculture, 607 F.2d 811, 814 & n. 8 (9th Cir.1979). "On appeal from or review of the initial decision [by the ALJ], the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule." 5 U.S.C. § 557(b) (1982). Cf. FCC v. Allentown Broadcasting Corp., 349 U.S. 358, 364, 75 S.Ct. 855, 859, 99 L.Ed. 1147 (1955) (Court of Appeals erred in concluding agency could not overrule ALJ's findings based on demeanor of a witness unless supported by a very substantial preponderance in the

in which such accounts, records, and memoranda shall be kept, and thereafter any such person who fails to keep such accounts, records, and memoranda in the manner and form prescribed or approved by the Secretary shall upon conviction be fined not more than $5,000, or imprisoned not more than three years, or both.

7 U.S.C. § 221 (1982).

testimony). A reviewing court may consider the ALJ's findings as part of the record in determining whether substantial evidence supports the J.O.'s decision. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496–97, 71 S.Ct. 456, 468–69, 95 L.Ed. 456 (1951). Where, as in this case, "credibility is at issue or when findings of motive or purpose depend entirely on credibility, the decision of the ALJ will be given special weight. Moreover ... the [agency's] findings of fact will be scrutinized more critically if they contradict those of the ALJ." *Butler-Johnson Corp. v. NLRB*, 608 F.2d 1303, 1305 (9th Cir.1979).

■■■ We agree that an agency may not depart arbitrarily from its own announced policies. *See Airport Parking Management v. NLRB*, 720 F.2d 610, 615 (9th Cir.1983). The J.O.'s announced policy of giving considerable weight to the ALJ's findings appears to be a proper recognition that the ALJ is in a better position to judge certain facts, which we consider in reviewing the J.O.'s decision. *See Butler-Johnson*, 608 F.2d at 1305. However, after carefully scrutinizing the record and the J.O.'s opinion, we find sufficient support for his finding that Bosma's conduct violated section 213.

### B. Showing of Harm.

■ In order to prove a violation of Section 213, the Department must show that the challenged conduct "is likely to produce the sort of injury the Act is designed to prevent." *Central Coast Meats, Inc. v. U.S.D.A.*, 541 F.2d 1325, 1327 (9th Cir. 1976). One of the purposes of the Packers and Stockyards Act is to safeguard farmers and ranchers against receiving less than the true market value of their livestock. *See* H.Rep. No. 1048, 85th Cong., 2d Sess. *reprinted in* 1958 U.S.Code Cong. and Admin.News 5212, 5213.

In *Central Coast Meats*, we held that the Secretary had erred in ordering the joint owners of both a cattle buying business and a meat packing business to divest themselves of one of the businesses. 541 F.2d at 1327. Although recognizing that the "inherent evil" in the failure of the two businesses to operate independently and competitively is the elimination of "a buyer from the marketplace who would otherwise be there," we found "no evidence that this actually occurred, or even that it was a likely result ...." *Id.* We found the Secretary's reliance on the hypothetical possibility of harm, as presented by expert testimony, insufficient to support a finding of a violation, noting that "generalized expert testimony as to the mere specter of these evils" should not be used to deem conduct in violation of the Act "without regard to the actual likely effect of such conduct." 541 F.2d at 1327–28 n. 2.

Bosma contends the J.O.'s decision is similarly inadequate. The J.O. disregarded testimony from the consignors that they preferred to sell for a "live" price, that Bosma gave them a good price, and that Bosma deserved to make a profit because he took the risk of the cows being condemned. The J.O. reasoned that consignors might have preferred to sell "subject" if Bosma had told them what he was doing and how much profit he was making.

This is quite a different case from *Central Coast Meats*. In that case, we found that Congress had determined that a dealer would not violate the Act by serving as a packer in all circumstances. 541 F.2d at 1327; *see* 7 U.S.C. § 202. Therefore, the Secretary did not have the power to make such conduct unlawful *per se*. Here, on the other hand, Congress has specifically determined that market agents must keep accurate records, and there is no question that Bosma did not do so.[4] Our question is not whether this conduct is prohibited, but

---

4. This fact also distinguishes *Corona Livestock Auction, Inc. v. USDA*, 607 F.2d 811 (9th Cir. 1979), in which we reversed the Secretary's order requiring Corona to cease and desist selling livestock by a method that allowed it to set prices "based on [its] own judgment of a proper or fair value of the animal." 607 F.2d at 812. We found that no evidence, other than theoretical assertions, supported the Secretary's conclusion that the prices were likely to be or actually were lower than those obtained by other selling methods.

whether it may be considered an "unfair" or "deceptive" practice absent a more specific showing of actual harm.

We are persuaded by the government's argument that, because the market agent has a fiduciary duty to his consignors, Bosma's failure to inform consignors that he is the actual purchaser of their livestock is inherently unfair, and that Bosma's reporting of Shamrock as purchaser on accounts of sale is deceptive.

██ A market agent must operate his business as a fiduciary to safeguard his consignors from receiving less than the true market value of their livestock. It is a well-accepted general rule that an agent selling for a principal is under a duty not to sell to himself without the principal's knowledge. *See Charlotte Aircraft Corp. v. Purdue Airlines, Inc.*, 498 F.2d 152, 156 (8th Cir.1974); Restatement (Second) of Agency, § 389 (1958). The Department's regulations specifically require an agent who purchases out of consignment for market support purposes to list his own name as purchaser on accounts of sale. 9 C.F.R. § 201.59. The agent's self dealing creates an inherently unfair situation because he must simultaneously represent both his and the consignors' interests in setting a price.

The harm in this case is more than merely hypothetical. The Department showed that Bosma made an average profit of $100 a head on the cows he purchased, in addition to his regular agent's commission. This large profit is sufficient evidence to support the J.O.'s conclusion that Bosma did not pay his consignors a fair price, regardless of whether they were satisfied with what they got. Under the circumstances, Bosma's practice of not informing his consignors of his self-dealing, and of reporting "Shamrock" as the purchaser, can be characterized as unfair and decep-

tive because it denies the consignors the opportunity to protect their interest in obtaining the best price for their cows, an interest Bosma is in no position to protect when he sells to himself.

Bosma further argues that in enacting section 221 Congress evinced an intent not to punish negligent record-keeping violations with monetary fines. Under section 221, the Secretary may prescribe the form in which records shall be kept. Only one who persists in failing to keep proper records thereafter is punishable with a criminal fine or jail sentence. 7 U.S.C. § 221 (1982).

Even assuming Bosma is correct in his contention that proof of a mere first-time record keeping violation is insufficient to prove a violation of section 213, this case involves more than simple negligence in record keeping. The J.O. found that Bosma failed to inform his consignors that he was purchasing their cows and intentionally listed "Shamrock" as the purchaser in order to deceive them.

### C. *Evidence of Nondisclosure and Deceit.*

Bosma challenges the J.O.'s factual findings on nondisclosure and deceit. Although this is a very close case because the ALJ reached the opposite conclusion, we find the J.O.'s finding of nondisclosure and deceit substantially supported by the record.[5]

None of the consignors who testified were aware that Bosma had been purchasing for his own account until they were so informed by the Department of Agriculture. Even Bosma's own testimony does not indicate that he made a practice of informing consignors about his purchases

---

5. Bosma testified, "if they ask me I would tell them, yes. Most of the time they don't ask me.... "I've told people that I've made money on the cattle, yes." At best, these statements indicate only that Bosma may have told some-

one what he was doing if he was asked. They do not contradict the consignors' testimony that Bosma did not inform them, or indicate that he took any steps to inform them that he was

and the profit he was making from resale of the cows.[6]

The evidence on Bosma's motive for using Shamrock's name as purchaser is in conflict. Bosma testified that he was confused about the regulations, and the ALJ found him credible. We cannot say the J.O. erred in reaching the opposite conclusion. Bosma was aware that the Department disapproved of his purchases out of consignment and he had been given a copy of the regulations, which clearly required him to report himself as purchaser. *See* 9 C.F.R. § 201.59. Bosma never sought clarification of those regulations. The J.O. could reasonably find nondisclosure and deceit from this circumstantial evidence, combined with the consignors' testimony of nondisclosure, the profitability of the purchases, and the likelihood that full disclosure might reduce the profit. We may not substitute our judgment for that of the J.O.

## II. Penalty.

■ Bosma challenges the J.O.'s imposition of a $10,000 civil penalty. The choice of sanction is largely within an agency's discretion; the reviewing court may overturn it only if it is unwarranted in law or unjustified in fact. *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185–88, 93 S.Ct. 1455, 1457–59, 36 L.Ed.2d 142 (1973).

Bosma contends the J.O. erred in refusing to consider evidence of the financial status of his business in setting the penalty. Bosma did not present this evidence at the hearing, but offered it on a motion for reconsideration of the J.O.'s decision. The J.O. refused to consider Bosma's evidence because he had failed to present it earlier even though he was aware that the Department was seeking a $15,000 penalty. Regulations allow the hearing to be reopened for new evidence only before the J.O. renders his decision. *See* 7 C.F.R. § 1.146(a)(2) (1982).

The statute specifically provides that in determining the amount of the penalty, "the Secretary *shall consider* the gravity of the offense, the size of the business involved, and the effect of the penalty on the person's ability to continue to do business." 7 U.S.C. § 213(b) (1982) (emphasis added). Because no evidence was introduced at the hearing on the latter two factors, the J.O. considered only the first in setting the penalty.

■ In his opinion, the J.O. stated, "Respondent [Bosma] has furnished no evidence that this penalty is unreasonable in view of the size of his business, or that it will prevent him from continuing in business." The J.O. apparently believed that Bosma had the burden of producing evidence that the size of the penalty sought by the USDA was unreasonable. However, section 7(d) of the Administrative Procedure Act, which is applicable here, provides that, "Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). The "burden of proof" as used in this section means the burden of going forward with evidence. *N.L.R.B. v. Transportation Management Corp.*, 462 U.S. 393, 403 n. 7, 103 S.Ct. 2469, 2475 n. 7, 76 L.Ed.2d 667 (1983). The Department was the proponent of the order assessing a $10,000 penalty and was therefore required to produce evidence that the penalty was reasonable. The lack of evidence was due to the Department's failure to meet its burden of producing evidence to support the penalty it sought. In the absence of such evidence, the J.O. had no basis for determining the size of the penalty because the statute requires him to consider all three factors.

making a considerable profit by reselling cows he had sold to himself.

**6.** Bosma also argues that the J.O.'s finding that Bosma wanted to hide his purchases is inconsistent with his finding that the purchases were made for market support purposes. We find no disturbing inconsistency. The J.O. also determined that Bosma was making an excessive profit on the cows, a fact which the J.O. could logically conclude might motivate him to deceive.

*III. Conclusion.*

The petition for review is granted. We affirm the J.O.'s finding that Bosma violated the Act, but vacate that part of the order directing him to pay a $10,000 penalty and remand to the agency for reconsideration of the amount of the penalty.