**PREMEX, INCORPORATED, and Samuel N. Zack, Petitioners,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Respondent.**

No. 84-7091.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 4, 1985.

Decided March 28, 1986.

Donald S. Weiss, Gottlieb & Schwartz, Chicago, Ill., for petitioner.

Kenneth M. Raisler, Gen. Counsel, Pat G. Nicolette, Dep. Gen. Counsel, Whitney Adams, Dep. Gen. Counsel, H. Lowell Brown, Washington, D.C., for respondent.

Before WALLACE, CANBY and BEEZER, Circuit Judges.

CANBY, Circuit Judge:

Samuel N. Zack seeks review of a final order of the Commodities Futures Trading Commission (Commission) that revoked his registration as an associated person and imposed a civil monetary penalty. We affirm in part and reverse in part.

## BACKGROUND

Zack was an officer and shareholder[1] of Premex, Inc.[2] Premex, a Michigan corporation, sells precious metals leverage contracts.

In November 1976, Zack registered with the Commission as an associated person. 7 U.S.C. § 6k. Premex registered with the Commission as a futures commission merchant (FCM) in January 1977. 7 U.S.C. § 6f. As a futures commission merchant, Premex was required to comply with certain financial and reporting requirements of the Commission, including that of maintaining minimum capital requirements. 7 U.S.C. § 6f(2); 17 C.F.R. § 1.10(d); 17 C.F.R. § 1.17.[3]

---

1. Zack became president of Premex in July 1979. Prior to July 1979, Zack was vice president of Premex, and his brother, Eugene Zack, was its president. Eugene Zack was a party to this action prior to his death in July 1979. The action was then dismissed as to Eugene Zack. Zack owned 50 percent of Premex's stock.

2. The Commission also found Premex liable for multiple violations of the Commodity Exchange Act, 7 U.S.C. §§ 1–26, and associated regulations. Premex's appeal in this matter has been stayed pending the outcome of its bankruptcy proceedings.

3. Although futures contracts differ from leverage contracts in several aspects, see 1 P. Johnson, *Commodities Regulation* § 1.08 at 23 (1982), leverage contracts were not regulated separately from futures contracts (except for a general antifraud provision now codified at 17 C.F.R. § 31.3) until 1984. In that year, the Commission promulgated comprehensive regulations for leverage contract merchants. 17 C.F.R. §§ 31.1–31.24.

In January 1978, the Commission brought an action against Premex and the Zacks in federal district court in Illinois seeking to enjoin them from violating the minimum capital requirements and from distributing allegedly false promotional literature. The parties consented to the entry of a permanent injunction.[4]

Subsequently, the Commission filed two administrative complaints, which are the subject of this petition.[5] The complaints were consolidated, and the Administrative Law Judge (ALJ) conducted a bifurcated hearing, considering the issues of liability and sanctions separately. The ALJ issued findings of fact and legal conclusions that upheld substantially all of the charges in the complaints. On appeal, the Commission affirmed the decision of the ALJ with modifications.

The Commission found that Zack had aided and abetted Premex in violating the minimum capital requirements by "knowingly and purposely assisting Premex in doing business while undercapitalized." It found that on four separate occasions (October 1977, December 1977, January 1978, and February 1978), Zack had willfully aided and abetted Premex in filing materially false financial statements. The Commission also found that Zack had made a materially false statement in Premex's application for renewal of its registration as an FCM in 1978. Finally, it found that Zack had willfully omitted a material fact from his 1978 application for renewal of his registration as an associated person. The Commission assessed a civil penalty of $215,000 against Zack and revoked his registration as an associated person.[6] Zack petitions for review of all of these findings except the finding that he made a material false statement in Premex's application for renewal of its registration as an FCM in 1978. Zack also challenges the sanctions imposed by the Commission.

We note jurisdiction pursuant to 7 U.S.C. § 9.

## DISCUSSION

### I. Aiding and Abetting Violation of the Minimum Capital Requirements

Zack contends that the Commission erroneously defined the underlying violation in its finding that he aided and abetted Premex's operation while undercapitalized. We disagree.

The Commission found that Premex violated section 4f(2) of the Commodity Exchange Act (the Act), 7 U.S.C. § 6f(2), and

---

4. Premex was subsequently found in contempt for making false statements in promotional literature. This order was affirmed. *CFTC v. Premex, Inc.*, 655 F.2d 779 (7th Cir.1981). The Commission was, however, unsuccessful in its attempts to persuade the district court to hold Premex and Zack in contempt for continued failure to meet the minimum financial requirements. Eventually, the district court vacated the portion of the injunction requiring Premex to comply with the minimum capital requirements on the ground that Premex did not have to meet those requirements because it was not doing business as an FCM. *CFTC v. Premex, Inc.*, 1982–84 Comm.Fut.L.Rept. (CCH), ¶ 21,685 (N.D.Ill. Feb. 14, 1983). The district court's order specifies that it has no collateral effect in this proceeding, which was under way when the order was entered.

5. The first complaint, filed in May 1979, charged that Premex, aided and abetted by Zack; had violated section 4f(2) of the Act, 7 U.S.C. § 6f(2), by failing to meet the minimum financial requirements for the preceeding 16

months; had violated the predecessors of 7 U.S.C. § 23 and 17 C.F.R. § 31.03 by distributing false and misleading promotional materials; had violated section 4f(1) of the Act, 7 U.S.C. § 6f(1), by filing materially inaccurate financial statements (1–FRs); and had violated section 6(b) of the Act, 7 U.S.C. § 9, by willfully misstating material facts on applications for registration as a futures commission merchant and as a commodity trading advisor. Zack was also charged with willfully omitting material facts from his application for reregistration as an associated person. The second complaint, filed in August 1980, contained some additional charges and realleged the charges contained in the earlier complaint.

6. The Commission modified the penalty assessment by the ALJ. The ALJ had assessed a penalty of $250,000 to be placed in escrow and subordinated to the claims of Premex's creditors. The Commission found the escrow to be inappropriate and reduced the penalty to $215,-000 based on its computation of Zack's net worth.

Regulation 1.17 by operating while in non-compliance with the minimum capital requirements. Zack contends that this is "contrary to the plain meaning of the statute and rule." He argues that a violation of section 4(f)(2) and 17 C.F.R. § 1.17 can be premised only upon the actual *fact* of undercapitalization, and that no additional violation results from *doing business* while undercapitalized. In short, for the Commission to show that he aided and abetted a violation, Zack asserts that the Commission must prove he willfully caused Premex to become undercapitalized, not merely that he knowingly assisted Premex to continue to operate *after* it had become undercapitalized. This argument cannot be sustained.

Our review of an agency's interpretation of its empowering act is of limited scope. *Lawrence v. Commodity Futures Trading Commission*, 759 F.2d 767, 772 (9th Cir. 1985). We accord the agency's interpretation "great deference," *id.* (quoting *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)), and will not substitute our construction of the statutory provision or rule for a reasonable interpretation by the administrative agency. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, ——, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

Section 4f(2) of the Act, 7 U.S.C. § 6f(2), provides that "each person [registered as a futures commission merchant] shall at all times *continue* to meet such prescribed minimum financial requirements...." (Emphasis added). Consequently, the Act imposes an affirmative duty on registered futures commission merchants to comply with the capital requirements at all times. The Commission's conclusion that a registered futures commission merchant violates the Act by operating while in noncompliance with the minimum capital requirements is, therefore, a reasonable construction of the statute.

The Commission's interpretation of the statute is consistent with the remedial purposes of the Act. The legislative history of the Act reflects Congress's intent that the FCM financial requirements protect the public from the dangers posed by undercapitalized futures commission merchants. *See, e.g.*, S.Rep. No. 947, 90th Cong., 2d Sess. 1–2, *reprinted in* 1968 U.S.Code Cong. & Ad.News, 1673, 1673–74. It would be inconsistent with that statutory purpose to hold that section 4f(2) of the Act is not violated by a registered FCM who operates in an undercapitalized condition.[7]

 Zack also challenges the Commission's finding that he aided and abetted Premex in its violation of section 4f(2) of the Act, 7 U.S.C. § 6f(2).[8] We have already rejected Zack's contention that the Commission improperly defined the violation underlying the aiding and abetting charge, and we find that the record amply supports the Commission's finding that Zack aided and abetted that violation.[9]

---

**7.** Zack also argues that, because Premex was not operating on the commodities market, it was not "operating as a futures commission merchant" and was not under any duty to cease operating while in an undercapitalized state. He bases this argument on Regulation 1.17(a)(4) which requires an undercapitalized FCM to transfer its accounts and to "cease doing business as a futures commission merchant." 17 C.F.R. § 1.17(a)(4). But this argument misperceives the statutory requirements. Premex, as a registered FCM, was required by law to continue to meet the minimum capital requirements. Once it became undercapitalized, it violated the law. When it failed to rectify its undercapitalized state, it operated while in violation of the law. Thus, as the Commission concluded, the obligation to meet the minimum financial requirements flows from the registrant's status as

an FCM and not from the nature of its current activities.

**8.** Section 13(a) of the Act, 7 U.S.C. § 13c(a), establishes aiding and abetting liability:

Any person ... who willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of any of the provisions of this chapter, or any of the rules, regulations, or orders issued pursuant to this chapter.... may be held responsible ... for such violation as a principal.

**9.** The record demonstrates that Zack was aware of the financial requirements applicable to all FCMs, that he was directly involved with Premex's financial dealings and that he was aware of Premex's failure to comply with the minimum financial requirements. As a registered

## II. Aiding and Abetting the Filing of Materially Inaccurate Financial Statements

█ The Commission ruled that Zack aided and abetted Premex in its filing of inaccurate financial reports for October and December 1977 and January and February 1978 [10] in violation of section 4f(1) of the Act, 7 U.S.C. § 6f(1), and Regulation 1.10. Zack contends that the Commission's findings are not supported by the weight of the evidence.[11]

The Commission based its findings on Zack's participation in three transactions that it characterized as appearing to have had "no purpose but to assist Premex in misleading both Premex's accountant and the Commission with respect to the true state of Premex's capitalization." These transactions included two $100,000 bank loans and a bank error of $150,000 that Premex treated as a loan.

Zack does not dispute that these transactions occurred or that they affected the picture of Premex's financial condition presented to the Commission. Rather, he disputes the Commission's refusal to accept his exculpatory explanation. Credibility determinations are questions of fact within an agency's province. *Lawrence*, 759 F.2d at 774 (citing *Moore v. Ross*, 687 F.2d 604, 607–09 (2d Cir.1982), *cert. denied*, 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 969 (1983)). We have reviewed the record in this case and conclude that the weight of the evidence supports the Commission's findings.

## III. Due Process

The Commission found that Zack violated section 6(b) of the Act, 7 U.S.C. § 9, because he did not reveal on his 1978 application for reregistration as an associated person that he was subject to a permanent injunction issued by the Illinois district court. Zack does not contest the factual basis of this finding. He contends, however, that he was denied due process of law because the ALJ denied his request that subpoenas be issued to six Commission employees to appear at the hearing. Zack argues that he was thereby denied the opportunity to present an affirmative defense that the Commission treated his application in a discriminatory fashion or arbitrarily deviated from its normal procedure.

Zack received a preprinted renewal application form from the Commission which he simply signed and returned. That form contained questions relating to Zack's fitness for registration as an associated person, one of which asked whether the applicant were subject to a permanent injunction. These questions were not preanswered by the Commission, and Zack did not respond to them. The Commission processed the application as submitted and used Zack's failure to respond to the question on injunctions as the basis for its omission charge. In essence, Zack contends that the Commission singled him out for prosecution because it did not return the incomplete form to him for additional information as, he asserts, it had done in the past. He sought to subpoena Commission personnel to obtain testimony about Commission procedures and practices at his hearing.

The rules of the Commission provide for the issuance of *subpoenas ad testificandum*. Regulation 10.68(b) prescribes spe-

---

associated person and an officer and director of a company engaged in a highly regulated business, Zack assumed certain responsibilities for conducting his affairs and those of the company, whose operations he directed, in accordance with the regulatory requirements. *See In the Matter of Dillon-Gage, Inc.*, [Current Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 22,574, p. 30,482 (CFTC 1984).

10. The minimum capital deficiencies found by the ALJ for these months were $144,301, $292,923, $441,030, and $321,050, respectively.

11. Section 6(b) of the Act, 7 U.S.C. § 9, provides the applicable standard of review: "the findings of the Commission as to the facts, if supported by the weight of the evidence shall ... be conclusive." Weight of the evidence has been defined as the "preponderance" or the "greater weight of the evidence." *See, e.g., Haltmier v. CFTC*, 554 F.2d 556, 560 (2d Cir.1977).

cial requirements for subpoenaing Commission records and employees. Application must be by motion for which Regulation 10.68(b)(2) specifies the content:

> The motion shall specifically describe the material to be produced, the information to be disclosed, or the testimony to be elicited from the witness, and shall show (i) the *relevance* of the material, information, or testimony *to matters at issue in the proceeding;* (ii) the reasonableness of the scope of the proposed subpoena; and (iii) that such material, information, or testimony is not available from other sources.

17 C.F.R. § 10.68(b)(2) (emphasis added). The ALJ, noting that the matter at issue in the proceeding was Zack's fitness for registration, found that Zack had failed to satisfy the relevance requirement and thus had failed to establish that he was entitled to the subpoenas.[12]

■ In support of his assertion that the ALJ's ruling denied him due process of law, Zack argues that proof of discriminary treatment would constitute a defense to the material omission charge. We do not address the validity of Zack's affirmative defense, because we conclude that the ALJ's ruling, even if it were erroneous, would not constitute a deprivation of due process.[13] *Cf. United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 533, 187 L.Ed.2d 537 (1969). The error, if any, did not deprive

Zack of the opportunity to present his affirmative defense. In fact, the Commission addressed his defense in detail on his appeal and found that it was meritless.[14] Zack does not appeal that finding.

## IV. Sanctions

Zack challenges the sanctions imposed by the Commission. The choice of an appropriate sanction is a matter within the agency's discretion. *See Bosma v. United States Dept. of Agriculture*, 754 F.2d 804, 810 (9th Cir.1984). The reviewing court may overturn a sanction only if it is unwarranted in law or unjustified in fact. *Butz v. Glover Livestock Commission Co., Inc.*, 411 U.S. 182, 185–88, 93 S.Ct. 1455, 1457–59, 36 L.Ed.2d 142 (1973).

■ Zack contends that the Commission abused its discretion by revoking his registration as an associated person and by imposing a civil monetary penalty of $215,000. We conclude that the Commission's revocation of Zack's registration as an associated person did not constitute an abuse of discretion.[15]

■ With regard to the assessment of the civil monetary penalty, Zack challenges the criteria applied by the ALJ and the Commission in arriving at the amount of the penalty. He also challenges the amount of the assessment.

---

**12.** Zack's application for interlocutory review of the ALJ's decision by the Commission was denied. The Commission indicated that not only had Zack failed to establish the relevance of his inquiry to the proceedings but he also had not laid an adequate foundation for his allegation of arbitrary conduct by Commission employees.

**13.** Zack relies on *Grolier, Inc. v. FTC*, 615 F.2d 1215 (9th Cir.1980, *appeal after remand*, 699 F.2d 983 (9th Cir.1983), *cert. denied*, 464 U.S. 891, 104 S.Ct. 235, 78 L.Ed.2d 227. There, however, we declined to address whether the denial of discovery in that proceeding violated the due process guarantee of the Fifth Amendment. *Id.* at 1222.

**14.** The Commission also found that Zack acted willfully, not merely carelessly, in failing to respond the question. Zack does not appeal that determination.

**15.** The Commission argues that Zack failed to preserve his right to appeal the revocation of his associated person registration because he did not raise that issue before the Commission. Although Zack's brief before the Commission discussed the monetary penalty and the trading prohibition levied by the ALJ (the latter was reversed by the Commission), but did not mention the revocation of his "associated person" registration, his arguments about lack of culpable conduct implicitly challenged all of the sanctions. Rejecting those arguments, the Commission "affirmed and adopted" the ALJ's decision "to the extent that it enters specific sanctions that are consistent with the views expressed in this opinion and order." We conclude that Zack preserved the issue of his registration revocation for appeal.

The Act provides that, in determining the amount of a monetary penalty, "the Commission shall consider, . . . in the case of a person whose primary business does not involve the use of the commodity futures market—the appropriateness of such penalty to the net worth of the person charged, and the gravity of the violation." 7 U.S.C. § 9a.' The Commission has the burden of producing evidence to support the penalty it seeks. *Bosma,* 754 F.2d at 810.[16]

Here, the Commission, as the proponent of the order assessing the monetary penalty, was required to produce evidence that the penalty was reasonable.[17] *See Bosma,* 754 F.2d at 810. The Commission, however, presented no evidence on the appropriateness of the penalty or on the gravity of the violations at the penalty hearing. No evidence was presented to refute Zack's testimony with regard to his assets and liabilities or on the impact of California community property laws on the determination of his net worth. The Commission chose not to cross-examine Zack on any of these issues. In the absence of such evidence, the ALJ and the Commission had no basis for determining the size of the penalty by applying the statutory factors.[18]

*Bosma,* 754 F.2d at 810. Nor does the Commission explain to us how a penalty virtually equal to the Commission's assessment of Zack's entire net worth constitutes a penalty that is "appropriate to his net worth." The Commission has failed to satisfy us that its monetary penalty was imposed under the standards required by 7 U.S.C. § 9a.

We therefore conclude that the Commission's assessment of the civil monetary penalty was unwarranted in law and, on this record, unjustified in fact. We remand for reconsideration of the penalty amount in light of this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

**16.** Section 7(d) of the Administrative Procedure Act, 5 U.S.C. § 556(d), which is applicable to Commission actions, provides: "Except as otherwise provided by statute the proponent of a rule or order has the burden of proof."

The "burden of proof" as used in this action means the burden of producing evidence. *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 403 n. 7, 103 S.Ct. 2469, 2475 n. 7, 76 L.Ed.2d 667 (1983). *See generally Bosma,* 754 F.2d at 810.

**17.** We recognize the Commission's view is that a respondent must invoke the protection of section 6(d) of the Act and that the respondent has the burden of producing evidence to create a record to enable the ALJ to consider the statutory factors. *See In the Matter of Rothlin,* [1982–84] Comm.Fut.L.Rep. (CCH) ¶ 21,851 (CFTC 1981). That is not the rule of this Circuit. *See Bosma,* 754 F.2d at 810. Although Congress has entrusted the fashioning of sanctions to the discretion of the Commission, that discretion is not unfettered. A civil monetary penalty must not exceed the statutorily prescribed limits. 7 U.S.C. § 9. But that is not the sole limitation on the Commission's discretion; 7 U.S.C. 9a prescribes the criteria the Commission "shall" consider in assessing monetary pen-

alties. The Commission's view that the statutory criteria apply only if the respondent raises the issue of his net worth is contrary to the plain language of the statute.

**18.** The Commission imposed a penalty of $215,-000 based on its assessment of Zack's net worth. Zack testified at the penalty hearing that his liabilities included a $250,000 loan from Premex. The ALJ had imposed a $250,000 penalty with the idea of recouping the loan for Premex's creditors by using an escrow arrangement. The Commission rejected the ALJ's plan, because penalties are statutorily required to be paid into the Treasury. The Commission chose instead to disregard the Premex loan as a liability in computing Zack's net worth, because it found that Premex was Zack's "alter ego" and the debt was not a "true loan and hence could not be included as a liability." The Commission purported to construct its "alter ego" theory, on which no evidence had been presented, from its review of the record of both proceedings in this matter, despite the fact the the validity of the loan had not been challenged at either the liability or the penalty hearing.