## McLAUGHLIN LAND & LIVESTOCK CO. v. BANK OF AMERICA, NAT. TRUST & SAV. ASS'N.

### No. 8385.

Circuit Court of Appeals, Ninth Circuit.

Jan. 25, 1938.

James M. Thomas, of San Francisco, Cal., for appellant.

Keyes & Erskine and William A. White, all of San Francisco, Cal., for appellee.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

The appellant, McLaughlin Land & Livestock Company, was a corporation in Monterey county, Cal., the entire stock of which was owned within the McLaughlin family; Patrick McLaughlin, Kathryn McLaughlin, Mary McLaughlin, and Thomas Maher, each owning one and one-quarter shares out of the total of five. Patrick McLaughlin had been president since the death of his father in 1923. Incorporated in 1913 the appellant was to engage in raising livestock and transacting general livestock business in all its branches, and to purchase lands, develop, cultivate, improve, and farm lands, to raise livestock, and transact a general farming and agricultural business in all its branches. Patrick, Mary, and Kathryn were brother and sisters, and Thomas Maher was their foster brother. The appellant had owned and operated, at least prior to 1932, a large ranch south of San Ardo in Monterey county, Cal. For failure to pay its corporate franchise tax the corporate powers, rights, and privileges of the appellant were suspended by the state of California from May 8, 1934, to April 24, 1936, when its powers, rights, and privileges were revived by payment of said tax.

Prior to 1926 the appellant was indebted to the Salinas City Bank in the sum of $110,000. In 1926 the Bank of Italy, which was succeeded by the Bank of America, purchased the assets of the Salinas City Bank, and the note of appellant was included in those assets. Subsequently, the appellant borrowed from the Bank of America approximately $63,800 and executed, on March 17, 1931, its promissory note for $173,800, and as security therefor, executed and delivered a deed of trust to all of its Monterey county property amounting to approximately 7,000 acres. The appellant defaulted in payment of this indebtedness, and a sale was had under the deed of trust on March 26, 1932, at which the Bank of America was the sole bidder, and its offer of $80,000 for the property was accepted.

Since the validity of the sale is or was questioned, it may be well, as illustrating the relation of the parties to this controversy and its bearing on the findings of the special master, to set out some of the evidence taken before the special master, even though we may not feel called upon to determine the status of the sale.

J. J. Taverna, at that time an assistant cashier in the Salinas branch of the Bank of America, testified that he conducted the sale March 26, 1932, pursuant to author-

ization of one S. J. Tosi of the Bank of America legal department contained in a letter written by Tosi to F. B. Lauritzen, manager of the Salinas branch. Taverna said that he wrote Mr. Tosi advising that the sale would be held as requested; that the sale was conducted at 10 a. m. March 26, 1932, at the steps in front of the main entrance to the Monterey county courthouse; that James Pedroni, also an employee of the bank, who had accompanied him to the sale, was the only bidder, offering the sum of $80,000 in behalf of the Bank of America, and the property was sold to the bank at that figure. The witness further testified that he had been instructed by Mr. Rice, vice president of the Salinas branch, to conduct the sale; that after the sale he returned to the bank and wrote Tosi that the sale had taken place.

A resolution of the Corporation of America (the trustee) was read before the special master, and the offer to file it was objected to and objection sustained. It provided that officers of the Bank of America should be designated as agents of the Corporation of America with authority to make and execute deeds and conveyances, notices of breach, and to sell, etc. The instrument did not specifically delegate authority to conduct sales, and it was contended that in the absence of specific delegation the authority did not exist.

Thomas Maher and Harold McGowan testified that they were present that morning from 9:45 to 10:30 on the steps of the courthouse, and that no sale was held, and that they did not see either Taverna or Pedroni.

On November 21, 1933, deficiency judgment was entered against the appellant on the above note in the amount of $98,699.98.

The McLaughlins and Maher remained upon the 640-acre ranch known as the "home place" following the sale under the deed of trust. Notice was given them by the Bank of America to surrender possession of the property and, after refusal, an action in unlawful detainer was brought in the state court which resulted in judgment for defendants, who alleged they were in possession as individuals under an oral seven-year lease from said Bank of America. Mary and Kathryn McLaughlin lived on the "home place" in separate houses. They cooked for the help, raised poultry, and did other farm work and general ranching. Thomas Maher had been a rancher all of his life, and within the year

immediately preceding the filing of the petition had worked on the ranch.

No independent action was brought by the McLaughlin Company to set aside the sale or alleged sale, under the deed of trust.

Between February 23 and 27, 1935, each of the four stockholders of appellant filed an individual petition under section 75 of the Bankruptcy Act, 47 Stat. 1470, 11 U.S. C.A. § 203, and note, in the District Court of the United States. The proceedings were dismissed on February 13, 1936, on motions of the Bank of America upon the ground that the petitions were filed for the purpose of delaying the trial of the action in unlawful detainer. The property over which the controversy was waged was 640 acres known as the "home ranch" of which the four individual stockholders of the McLaughlin Company held possession.

The appellant, between April and November, 1931, executed several promissory notes in amounts from $32 to $3,100, secured by chattel mortgages, which afterwards apparently were foreclosed.

On March 9, 1936, the appellant filed its "debtor's petition in proceedings under section 75 of the Bankruptcy Act," which was approved for filing and referred to a conciliation commissioner on the same day. On April 24, 1936, the Bank of America, having filed a petition to dismiss the proceedings, filed a supplemental petition, to which the McLaughlin Company filed an answer. The petition to dismiss was referred to a special master to ascertain and report the facts, with his conclusions thereon.

The special master found that the McLaughlin Company was not a farmer within section 75; that the foreclosure sale was actually held on March 26, 1932; that there was no merit in the claim that the sale was invalid because the property was not offered for sale in separate parcels; that the debtor corporation was estopped to deny the validity of the sale by virtue of section 338(4) Code of Civil Procedure of California, as amended by St. 1935, p. 1673 (an action for relief on the ground of fraud or mistake must be brought within 3 years); that the debtor corporation was estopped to deny the validity of the trustee's sale by reason of the deficiency judgment (its president having been present in court); that it was estopped also by reason of laches, it not having filed action to set aside such sale or made attack upon it;

that no plan of composition was ever presented by the debtor corporation; that the judgment in the unlawful detainer action was not res judicata on the question of title against the appellee; that the Mc-Laughlin Company was not the owner of the real property listed in its schedules; that although the foreclosure sale was not conducted by a person who was prior thereto authorized by the corporate trustee, the execution and delivery of the trustee's deed constituted a ratification of the sale and that the sale was, therefore, valid; that the indebtedness was in excess of the actual value of the lands and, hence, no possibility of rehabilitation. At the conclusion of his findings the special master recommended that the supplementary petition to dismiss be granted.

The debtor filed exceptions to the report, but the District Court overruled the exceptions, approved the findings of the special master, and dismissed the proceedings. Appeal from this order was allowed both by the Circuit Court of Appeals and by the District Court.

The questions involved are stated by the appellant as follows:

"(1) Was appellant a 'farming corporation' within the meaning of section 75 of the Bankruptcy Act as amended?

"(2) Did the bankruptcy court have jurisdiction over appellant because of its corporate suspension under the statute of California?

"(3) Was the foreclosure sale of the real property wherein appellant claimed to hold an equity of $105,503.57, valid, notwithstanding the Special Master's finding that the said sale had been *actually conducted by a person who was not prior thereto duly authorized by the corporate trustee*,' although he found, contrary to the evidence and the law, that said sale had been *'ratified and confirmed by the execution of the trustee's deed.'*" (Italics author's.)

We find it necessary to decide only the first question raised by the appellant for, if, as was found by the special master, the appellant is not a farmer as defined by section 75, the section does not apply to it and the proceeding was properly dismissed. A farmer, as defined by section 75(r), as amended, is an individual who is primarily bona fide personally engaged in producing products of the soil, engaged in dairy farming, the production of poultry products or livestock in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations.

We look to the evidence on the question of whether or not the appellant was entitled to file its petition as a farming corporation under section 75 of the Bankruptcy Act.

Testifying before the special master in April, 1936, Patrick McLaughlin said that the debtor corporation had not been engaged in farming since 1932. As heretofore noted, the corporate franchise of appellant was suspended from May 8, 1934, to April 24, 1936, and it, therefore, could not function as a corporation and was incapable of exercising corporate powers for any business purpose. Deering's General Laws of California, Act 8488, § 32; 6a Cal. Jur. § 863, p. 1466. If it was incapable of acting at all in a corporate capacity, how could it farm? And, if it could not farm or function as a corporation, how could the principal part of its income be derived from farming? The admission by its president that the debtor corporation had not been farming since 1932 seems conclusive.

This is not to deny appellant any right under the bankruptcy laws, but merely to hold that because the appellant was incapable of performing any corporate acts, it was, during the two-year period of suspension, which extended even beyond the filing date of the petition, not a farmer. We express no opinion on the question of the jurisdiction of the state court to determine the validity of any sale of the property here involved or on other questions raised by appellant; it not being necessary so to do.

The order of the District Court is affirmed upon the ground that the appellant was not, at the time of filing its petition or immediately prior thereto, a farming corporation.

Affirmed.