**BLACKFOOT LIVESTOCK COMMISSION, CO.,**
**Petitioner,**

v.

**DEPARTMENT OF AGRICULTURE, PACKERS AND STOCKYARDS ADMINISTRATION, Respondent.**

No. 86–7198.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1987.

Decided Feb. 20, 1987.

James Michael Kelly, Raymond W. Fullerton, Aaron B. Kahn, Washington, D.C., for respondent.

Robert M. Cook, Norfolk, Nebraska, for petitioner.

Before WRIGHT, FARRIS and BEEZER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Blackfoot Livestock Commission Company appeals the decision of the Department of Agriculture, finding a violation of the Packers and Stockyards Act, 7 U.S.C. §§ 181–229. We hold that substantial evidence in the record supports the agency's decision. We further hold that the finding of check-kiting was not precluded by a prior court decision, the agency had the authority to increase the sanction, and the Jencks Act was not violated.

BACKGROUND

Blackfoot operates a stockyard and livestock auction registered with the Secretary of Agriculture and regulated under the Packers and Stockyards Act, 7 U.S.C. §§ 181–229 ("the Act"). The Act requires registered livestock auctions to act as fiduciaries, assuring livestock sellers of receiving fair market value for their livestock. Auctions must keep separate accounts and records for consignors, and may not use unfair or deceptive trade practices in conducting their sales.

In 1983, the Secretary filed a complaint alleging that Blackfoot had operated while insolvent, misapplied funds in its trust accounts, engaged in speculative livestock purchases, paid consignors with drafts instead of checks, and engaged in a check-kiting scheme, all in violation of the Act and its accompanying regulations.

An Administrative Law Judge conducted a hearing on this complaint in 1984, at which two Department investigators testified. When Blackfoot requested any Jencks Act statements made by the investigators, the government disclosed certain portions of the investigative reports. The ALJ denied Blackfoot's request for the remaining documents without conducting an in camera review.

Blackfoot had been sued previously by Zions National Bank in connection with a check-kiting scheme. Blackfoot and Uinta, a livestock dealer, simultaneously exchanged drafts, artificially inflating their bank balances. Blackfoot admits that many of the drafts reflected fictitious livestock purchases. During the first six months of 1981, Uinta and Blackfoot exchanged 75 drafts totaling more than $8,600,000.

When this scheme unraveled, Blackfoot dishonored the last three drafts drawn to Uinta, which had already deposited them in its account with Zions and received final credit. Zions attempted to recover on these drafts from Blackfoot, but its claim was dismissed by a Utah federal district court. The court held that, under the UCC, Blackfoot as a drawee could not be liable on the drafts because it had not accepted them.

Blackfoot placed this decision in evidence before the ALJ who found, nevertheless, that Blackfoot and Uinta were engaged in a check-kiting scheme. He also found for the Department on its other allegations. He recommended that Blackfoot be suspended for 35 days, and ordered it to cease and desist its unlawful practices.

Blackfoot appealed to the Secretary of Agriculture's Judicial Officer (JO). The JO affirmed the ALJ's decision in all respects, but sua sponte increased the suspension to six months after soliciting responses from the parties.

Blackfoot appeals the JO's decision and the imposition of increased sanctions. It maintains that the findings of violations of the Act were not supported by substantial evidence, that the finding that a check-kiting scheme existed was barred by collateral estoppel, that the Secretary lacked authority to impose greater sanctions, and that Jencks Act materials were improperly withheld.

STANDARD OF REVIEW

We must uphold the JO's decision if it is supported by substantial evidence. *Bosma v. United States Dept. of Agriculture,* 754 F.2d 804, 807 (9th Cir.1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stamper v. Secretary of Agriculture,* 722 F.2d 1483,

1486 (9th Cir.1984), (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

This court will not reverse the ALJ's credibility findings as affirmed by the JO unless they are "inherently incredible or patently unreasonable." *Southwest Sunsites, Inc. v. F.T.C.*, 785 F.2d 1431, 1437 (9th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 109, 93 L.Ed.2d 58 (1986), (quoting *NLRB v. Anthony Co.*, 557 F.2d 692, 695 (9th Cir.1977)). Where derivative inferences are involved, our deference is to the JO, not to the ALJ. *Stamper*, 722 F.2d at 1486.

## ANALYSIS

### I. *Blackfoot's Violations of Packers and Stockyards Act*

The agency determined that Blackfoot's actions constituted five separate violations of the Act. Blackfoot's arguments that these findings are not supported by substantial evidence fail.

### A. *Blackfoot's Insolvency*

The Act prohibits operating a stockyard while insolvent. 7 U.S.C. § 204; *Bowman v. United States Dept. of Agriculture*, 363 F.2d 81 (5th Cir.1966). Insolvency is defined as current liabilities exceeding current assets. *Bowman*, 363 F.2d at 84–85. The Secretary defines current assets and current liabilities by regulation. 9 C.F.R. § 203.10(b)(1) (1982) (assets); 9 C.F.R. § 203.10(b)(2) (1982) (liabilities).

The JO classified Blackfoot's $1,000,000 line of credit as short term debt because it was a note payable either on demand or in an eleven month term and was therefore a current liability under the regulations. 9 C.F.R. § 203.10(b)(2) (current liabilities are those reasonably expected to consume resources or create new liabilities within one year). Because the JO's construction of this note was reasonable and consistent with the regulation, there is substantial evidence supporting the JO's finding that Blackfoot operated while insolvent.

### B. *Custodial Account*

Blackfoot, as a registered auction, must maintain a separate custodial account for consignor's funds. 9 C.F.R. § 01.42 (1982). Blackfoot acts as a fiduciary and may not mingle these accounts with other operating funds. *Id. See also Bosma*, 754 F.2d at 809 (registered auctions must operate as fiduciaries for livestock sellers).

The departmental investigators reconciled Blackfoot's custodial account at the close of four separate months. Each time there was a deficiency of varying amounts. Both the ALJ and the JO found Blackfoot's explanation for the discrepancies not credible. Substantial evidence supports the JO's conclusion that Blackfoot had improperly maintained its custodial account.

### C. *Speculative Purchases*

Speculative purchases by a registered auction are prohibited, but purchases may be made to support the market and ensure that consignors get a fair price. 9 C.F.R. § 201.57(a) (1982).[1] The record indicates that Blackfoot repeatedly engaged in transactions in which its officers had located buyers, frequently at a higher price, before purchasing the cattle. These transactions directly violated the regulations. *See In re Smithfield Livestock Market*, 36 Agric.Dec. 1546, 1562–67 (1977). There was substantial evidence to support the JO's conclusion that Blackfoot had made speculative livestock purchases.

### D. *Improper Payment for Livestock*

The Act requires all auction transactions to be closed at the end of the next business day. 7 U.S.C. § 228b(a). Market agencies must pay for purchases by check. Payment by draft, which adds a day to the collection process, is not permitted unless the seller agrees beforehand in writing. 9 C.F.R. § 201.43(b) (1982). Blackfoot admitted that it paid for livestock with drafts. It

---

**1.** This regulation is currently codified at 9 C.F.R. § 201.56(c) (1986).

appears that Blackfoot continued to do so after being advised it was violating the Act. Substantial evidence supports the JO's finding that Blackfoot knowingly violated the Act by paying for livestock with drafts instead of checks.

### E. *Check-Kiting*

 Registered auctions are prohibited from using deceptive practices in connection with the sale of livestock. 7 U.S.C. § 213(a). Blackfoot and Uinta Livestock, a ranching company, exchanged drafts exceeding 8.6 million dollars over a six month period. Neither had a sufficient balance at the time the drafts were issued to cover the drafts written. The drafts were not paid until the corresponding drafts were deposited. Blackfoot's office manager admitted that the drafts frequently reflected fictitious livestock purchases purportedly paid for by the draft. The JO's conclusion that Blackfoot had engaged in check-kiting is supported by substantial evidence.

### II. *Finding of Check-Kiting not Precluded by Prior Court Decision*

 Blackfoot contends that the finding of check-kiting is barred by a prior court decision. Zions National Bank had sued Blackfoot in district court to collect on dishonored drafts. In an unpublished decision, the Utah court dismissed the suit holding that under the UCC, Blackfoot was not liable to Zions. The check-kiting issue was not decided.

Blackfoot may not rely on collateral estoppel because the factual issues litigated were different from those in the present case. *See Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The JO's finding that Blackfoot kited checks is not precluded by the prior decision.

### III. *Increased Sanction*

 The JO's decision to increase the sanction may not be overturned unless unwarranted in law or unjustified in fact. *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973). This court may decide only whether the chosen remedy is "an allowable judgment" under the pertinent statute and relative facts. *Id.* at 189, 93 S.Ct. at 1459; *see also Stamper,* 722 F.2d at 1489.

The Administrative Procedures Act provides that, on review of an ALJ decision, the agency shall have "all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule." 5 U.S.C. § 557(b). The Department's regulations permit the JO to raise issues not presented by the parties on his own motion. 7 C.F.R. § 1.145(e) (1985).

This court has sustained the increase of an administrative sanction. *See Nees v. Securities and Exchange Commission,* 414 F.2d 211, 217 (9th Cir.1969). Other circuits also have upheld the authority of agencies to increase sanctions proposed by the ALJ. *See, e.g., In re Thornton,* 41 Agric.Dec. 870 (1982), *aff'd sub nom. Thornton v. United States Dept. of Agriculture,* 715 F.2d 1508, 1513 (11th Cir. 1983); *In re Mid-States Livestock,* 36 Agric.Dec. 172, 176 (1977) (JO has the authority and responsibility to increase the sanction if necessary to effectuate the purposes of the Act), *aff'd sub nom. Van Wyk v. Bergland,* 570 F.2d 701 (8th Cir.1978); *River Forest Pharmacy, Inc. v. Drug Enforcement Administration,* 501 F.2d 1202 (7th Cir.1974).

 The JO's increased sanction is permitted by both APA and Departmental regulations. Blackfoot's check-kiting scheme and other infractions warrant a severe sanction. The six month sanction is an allowable judgment and will not be overturned.

### IV. *Jencks Act Materials*

Blackfoot contends that it was denied materials which must be disclosed under the Jencks Act. The Jencks Act compels disclosure of oral or written substantially verbatim statements adopted by witnesses testifying for the government that relate to their testimony. 18 U.S.C. § 3500. Department of Agriculture proceedings are

subject to the Jencks Act. 7 C.F.R. § 1.141(g)(1)(iii) (1985). Blackfoot's argument that the undisclosed material falls within the Jencks act is without merit.

 We review the Jencks Act determinations by the ALJ and JO for abuse of discretion. *See United States v. Miller,* 771 F.2d 1219, 1229 (9th Cir.1985). Although trial courts should generally conduct an in camera inspection before concluding that documents are not Jencks Act material, failure to do so is not always reversible error, especially if the requested materials are not in fact "statements" of government witnesses. *Id.* at 1230. Only statements of a government witness that relate to that witness's testimony must be disclosed. *See Fairbank v. Hardin,* 429 F.2d 264, 268 (9th Cir.), *cert. denied,* 400 U.S. 943, 91 S.Ct. 244, 27 L.Ed.2d 247 (1970).

Two Department investigators testified before the ALJ. Their testimony explained the investigation and introduced documents recovered from Blackfoot, banks, and livestock sellers. The government released the investigative reports prepared by the investigators, but refused to disclose the entire investigative file, statements prepared for witnesses who did not testify at the hearing, and an investigator's application for promotion to a supervisory position.

The agency determined correctly that no document sought by Blackfoot was Jencks Act material. The investigative file consisted primarily of records and documents, as well as brief memoranda explaining these documents. Such investigative files are not statements of investigating agents under the Jencks Act. *See United States v. Dark,* 597 F.2d 1097, 1099 (6th Cir.), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 183 (1979). The Jencks doctrine has not been extended to require the government to produce an entire investigative file. *Ubiotica Corp. v. Food and Drug Administration,* 427 F.2d 376, 382 (6th Cir.1970). Because Blackfoot was given any memorandum authored by the testifying investigators, it was not denied Jencks Act materials.

The statements and accompanying documents of witnesses who did not testify are similarly not discoverable under the Jencks Act. *See United States v. Disston,* 612 F.2d 1035, 1038 (7th Cir.1980) (statements of witnesses not testifying at hearing made to agency investigators not discoverable).

Finally, Blackfoot sought the investigator's application for promotion to a supervisory position. This application set forth his prior work experience and duties within the Packers and Stockyards Administration. It did not relate to his testimony, which explained the results of the Department's investigation of Blackfoot. It had minimal, if any, relevance to Blackfoot's litigation. Any error in refusing to disclose it was harmless. *See Miller,* 771 F.2d at 1233 (the court applied the harmless error doctrine to Jencks Act decision). There was no abuse of discretion in refusing to disclose this application under the Jencks Act.

The JO's decision that Blackfoot violated the Act is supported by substantial evidence, and we uphold the increased sanction.

A<span style="font-variant:small-caps">FFIRMED</span>.