15 F.3d 1086
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 LLOYD MYERS CO., INC., and/or Lloyd Myers, d/b/a Lloyd Myers
Co., Inc., Petitioner,
v.
DEPARTMENT OF AGRICULTURE, Respondent.
 No. 92-70587.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 12, 1994.*
Decided Jan. 26, 1994.
 
 Before: ALDISERT,** WIGGINS and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Lloyd Myers Co. Inc. and its owner Lloyd Myers (collectively hereinafter "Myers") petition for review of a decision by the Secretary of the Department of Agriculture that Myers (1) violated Section 2(4) of the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. Sec. 499b(4), by failing to make full payment promptly of $334,000.00 for 63 lots of perishable agricultural products and (2) violated Sections 3 and 8(c) of PACA, 7 U.S.C. Secs. 499c, 499h(c), by obtaining its federal license to deal in perishable agricultural commodities through the use of false or misleading statements on its application. As a penalty for these independent violations of the statute, the Secretary revoked Myers' PACA license. We will deny the petition for review.
 
 I.
 
 3
 On this appeal from the determination of an administrative agency, we must uphold the decision if it is supported by substantial evidence. Blackfoot Livestock Comm'n Co. v. Dept. of Agric., 810 F.2d 916, 920 (9th Cir.1987). Under this standard, our task is to determine whether the Secretary presented "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The standard does not change when the agency's final decision-maker overturns the administrative law judge's (ALJ) initial decision. Rather, the decision becomes part of the administrative record to be considered by the reviewing court and given such weight as reason and judicial experience dictate. See National Labor Relations Bd. v. Int'l Bhd. of Elec. Workers, Local 77, 895 F.2d 1570, 1573 (9th Cir.1990).
 
 II.
 
 4
 Initially, the Secretary determined that Myers, a licensed commission merchant, failed to make timely payment of $334,000.00 for 63 lots of perishable agricultural commodities.
 
 
 5
 The Perishable Agricultural Commodities Act requires that all commissioned merchants, dealers or brokers "make full payment promptly in respect of any transaction." 7 U.S.C. Sec. 499b(4). The Secretary has interpreted the statute to require full payment within 10 days of receipt of the produce, unless the parties agree in writing before the transaction to enlarge the period. 7 C.F.R. Sec. 46.2(aa). The Secretary may revoke a license when there have been repeated, flagrant and willful violations of the timely payment provisions of PACA. Farley & Calfee v. Dept. of Agric., 941 F.2d 964, 966 (9th Cir.1991); Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 780 (8th Cir.1991).
 
 
 6
 Between July 28, 1988 and October 11, 1988, Myers agreed to purchase and receive 63 lots of agriculture products from Ranchero Packing Co., Inc. for a total of $334,000.00. On July 15, 1988, Myers and Ranchero entered into an agreement extending the payment period 45 days beyond the 10 required by the statute, an agreement permissible under the Secretary's regulations. The record shows, however, that Myers failed to make full payment within the extended period.
 
 
 7
 Myers' defense is that it transferred real property to Ranchero as payment in full. Although the property was transferred to Sanchez, the owner and manager of Ranchero, Sanchez testified that he understood Myers to be responsible for the balance due should the property ultimately be sold for less than Myers' outstanding obligation. At the time of the administrative hearing, the property had yet to be sold.
 
 
 8
 What we have here is nothing more than an attempt by Myers to ameliorate Ranchero's unpaid claim for goods sold and delivered with an unpaid claim now secured by a pledge of real estate. Stripped to its essence, the deal is an attempt by Myers to pay Ranchero from the proceeds of a future sale of real estate. Under these circumstances, we must agree with the Secretary that the strict admonition of Section 499b(4) of "full payment promptly" has not been met. It is stated congressional policy that, because the subject of these sales are perishable goods, time is always of the essence.
 
 
 9
 Based on this record, there is substantial evidence to support the Secretary's finding that the purchase price of the perishable commodities had not been paid by Myers in accordance with the statute and applicable regulations and that its violations were repeated, flagrant and willful.
 
 III.
 
 10
 The Secretary also revoked Myers' license on the independent ground that Lloyd Myers, sole shareholder in Lloyd Myers Co. Inc., made a false and misleading statement in an application to renew the corporation's license in violation of PACA.
 
 
 11
 At all times relevant to our inquiry, Lloyd Myers conducted his business under a license issued in the corporate name. On October 16, 1984, Myers filed an application for a PACA license in the name of the corporation, which had been chartered under the laws of California. The corporation was originally incorporated on August 31, 1979, but on August 2, 1982, California's Franchise Tax Board suspended its corporate charter for non-payment of California franchise taxes. On August 15, 1988, after the corporation paid its delinquent taxes covering an extensive period from August of 1981 through August of 1987, the state restored the corporate charter.
 
 
 12
 Following the October 1984 application by Myers, PACA officials relicensed the corporation without investigating its corporate status. Thus, at the time the application was made by the corporation for a license, the state considered the corporation charter suspended. Lloyd Myers Co. Inc. had no power to function under California law. After this information came to its attention, the Agriculture Department revoked Myers' license. The Department ruled that Lloyd Myers made a false or misleading statement in the license application, to-wit, that the applicant was a viable California corporation. Myers requested a hearing before an ALJ who found in its favor, but upon appeal the judicial officer reversed.
 
 
 13
 We must first decide whether the Secretary timely appealed the ALJ's ruling on this matter to the judicial officer. We are satisfied that the judicial officer did not err in deciding that the agency's cross-appeal and response to Myers' appeal were timely filed on March 20, 1991. The record shows that on February 23, 1990, the ALJ, with the consent of the parties, consolidated the proceedings at PACA Docket No. D-88-547 (false and misleading application claim) and No. D-89-539 (untimely payment claim). On December 11, 1990, the ALJ issued a decision and order in the consolidated cases.
 
 
 14
 On January 11, 1991, Myers received an extension of time in which to file an administrative appeal. Subsequently, Myers appealed the ALJ's decision to revoke its license for untimely payments. Then, the agency cross-appealed the ALJ's decision not to revoke Myers' license because of misleading statements made in its application. The judicial officer determined that, when the ALJ granted the extension, it applied to both the agency and Myers because the cases had been consolidated. We conclude that the judicial officer did not err in deciding that the agency's administrative appeal was timely filed.
 
 
 15
 On the merits, we begin with the statute itself. PACA explicitly permits the Secretary to revoke a license obtained through the use of either an inaccurate or a misleading statement. 7 U.S.C. Sec. 499h(c). Here, Myers represented itself as a corporation when in fact its charter had been suspended. Under California law, a corporation, which has been suspended for failure to pay franchise taxes, is prohibited from conveying property or enforcing a contract. Usher v. Henkel, 205 Cal. 413, 417 (1928); Damato v. Slevin, 214 Cal.App.3d 668, 674 (1989); see also Mather Constr. Co. v. United States, 475 F.2d 1152, 1155 (Cl.Ct.1973) ("Under the law of California, a corporation which has been suspended for failure to pay franchise taxes is prohibited from suing, from defending a suit, or from appealing from an adverse decision."). We have stated that upon suspension of a corporate franchise, the business entity "[can] not function as a corporation and [is] incapable of exercising corporate powers for any business purpose." McLaughlin Land & Livestock Co. v. Bank of America, 94 F.2d 491, 493 (9th Cir.1938).
 
 
 16
 A PACA official testified that had Myers revealed in its application that the corporate charter had been suspended, it would not have been issued a license in 1984. Supp.E.R. at 54.
 
 
 17
 Under these circumstances, we conclude that there was substantial evidence to support the Secretary's determination to revoke Myers' license due to a violation of Section 499h(c).
 
 IV.
 
 18
 In sum, we determine that there was substantial evidence to support the Secretary's decision to revoke Myers' PACA license on two separate and independent grounds, the violation of Section 499b(4) and the violation of Section 499h(c).
 
 
 19
 We have considered all contentions presented in this petition for review. To the extent not discussed herein, any other arguments have been considered and rejected.
 
 
 20
 The petition for review is DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Ruggero J. Aldisert, Senior Judges, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3