TROY LEE HARMS V STATE OF TEXAS



 NO. 07-02-0181-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MAY 20, 2002


______________________________



JONATHON ANTWAN DONALDSON




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 209TH DISTRICT COURT OF HARRIS COUNTY;



NO. 902,509; HON. MICHAEL McSPALDEN, PRESIDING


_______________________________



ABATEMENT AND REMAND


_______________________________



Before BOYD, C.J., QUINN and REAVIS, JJ.

 Appellant, Jonathon Antwon Donaldson, appeals from a judgment under which he
was convicted of possession with intent to deliver cocaine weighing more than 1 gram and
less than 4. The clerk's record has been filed in this cause but the reporter's record has
not. Furthermore, appellant, has filed a pro se "Petition to Dismiss" requesting the appeal
be withdrawn. However, the notice is not signed by appellant as required by Texas Rule
of Appellate Procedure 42.2(a). 

 Accordingly, we now abate this appeal and remand the cause to the 209th District
Court of Harris County (trial court) for further proceedings. Upon remand, the trial court
shall immediately cause notice of a hearing to be given and, thereafter, conduct a hearing
to determine the following: 

 1. whether appellant desires to prosecute the appeal; and, 

 2. whether appellant is indigent. 

The trial court shall cause the hearing to be transcribed. So too shall it 1) execute findings
of fact and conclusions of law addressing the foregoing issues, 2) cause to be developed
a supplemental clerk's record containing the findings of fact and conclusions of law and
all orders it may issue as a result of its hearing on this matter, and 3) cause to be
developed a reporter's record transcribing the evidence and arguments presented at the
aforementioned hearing. Additionally, the district court shall then file the supplemental
record with the clerk of this court on or before June 19, 2002. Should further time be
needed by the trial court to perform these tasks, then an extension must be requested
before June 19, 2002. Furthermore, should appellant submit to this court a document
complying with Texas Rule of Appellate Procedure 42.2(a) and evincing his decision to
withdraw his notice of appeal before the trial court convenes a hearing pursuant to this
order, then the appeal will be reinstated, and the court will act on the matter in due course.

 It is so ordered. 

 Per Curiam 

 Do not publish. 

 



al days after they had been
removed from the Auction yard. There were also instances when appellant paid with a
check shortly after purchase but would request the Auction hold the check until he was able
to procure sufficient funds to cover the amount. In such instances, appellant would attempt
to resell the cattle and use the proceeds to reimburse the auction for the purchase price. 
Even though this practice occasionally resulted in some of appellant's checks being
returned for insufficient funds, Myers testified "we made out just fine," and "he always made
them good."

 On Saturday, October 12, 2002, appellant was declared the high bidder on 218 head
of cattle at the Muleshoe Auction. As was custom, the Auction issued a check to the seller
from the custodial account shortly following the sale. That evening or Sunday, with the
Auction's permission, appellant removed the cattle from the Auction yard. On Monday,
October 14, appellant wrote a check payable to Muleshoe Livestock Auction, Inc. for the
purchase price in the amount of $53,402.55. However, appellant asked Myers to hold the
check until the following Friday due to insufficient funds in his account. Myers agreed and
did not deposit the check. Appellant was unable to sell the cattle or otherwise obtain funds
sufficient to cover the amount of the check. (3) The Auction deposited appellant's check on
Friday, October 18, and it was presented for payment at appellant's bank on October 21. 
Appellant's bank immediately returned the check for insufficient funds. 

 When appellant discovered the check had been returned, he contacted Myers and
explained he was having difficulty selling the cattle. He asked Myers if he would withhold
from depositing the check again, and Myers agreed. Myers and appellant continued to do
business together until it became clear Myers would not be able to recover the amount of
the check. However, Myers continued to hold appellant's check and did not present it to
the bank for payment again. In February 2003, appellant was charged with felony theft of
the $53,402.55. After a jury trial, he was found guilty and sentenced to five years
confinement, $53,402.55 in restitution, and a $10,000 fine. 

 By his sole point of error, appellant contends the State's evidence pertaining to the
consent element of theft is factually insufficient to support his conviction. We agree.

 As material here, the trial court instructed the jury that:


 Appropriation of property is unlawful if it is without the owner's effective
consent;


 "Consent" means assent in fact, whether express or apparent;


 "Effective consent" includes consent by a person legally authorized to act for
the owner. Consent is not effective if induced by deception; and


 Among other things, the jury was charged that a finding of guilty must be
based upon their finding that the cattle were taken "without the effective
consent of the owner."



Appellant does not present any charge error. 

 

 

Standard of Review



 When reviewing a factual sufficiency claim, we must view all the evidence without the
prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is
so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Clewis v. State, 922 S.W.2d 126, 129 (Tex.Cr.App. 1996). We must determine, considering
all of the evidence in a neutral light, whether the jury was rationally justified in finding guilt
beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Cr.App. 2004). 
However, we must give deference to the jury verdict and their determinations involving the
credibility of witnesses. Clewis, 922 S.W.2d at 135 (holding "courts 'are not free to reweigh
the evidence and set aside a jury verdict merely because the judges feel that a different
result is more reasonable'") (citing Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex.
1986)). 

 There are two ways evidence may be insufficient. Zuniga, 144 S.W.3d at 484. First,
evidence supporting the verdict may be too weak to support a guilty verdict beyond a
reasonable doubt. Id. Second, there may be evidence supporting the verdict and evidence
contrary to the verdict. Evidence is factually insufficient if, when weighing all the evidence,
the contrary evidence is so strong that the beyond-a-reasonable-doubt standard could not
have been met. Id. at 485. Under this standard, evidence of guilt can "preponderate" in
favor of conviction but still be insufficient to prove the elements of the crime beyond a
reasonable doubt. Id.

Analysis

 Section 31.03 of the Penal Code provides that a person commits the offense of theft
if (1) he appropriates property, (2) without the owner's effective consent, and (3) with intent
to deprive the owner. Tex. Pen. Code Ann. § 31.03(a)-(b) (Vernon Supp. 2004-05). An
owner's consent is not effective if induced by deception or coercion. Id. at § 31.01(3)(a). 
Indeed, the sine qua non of the offense of theft is lack of effective consent on the part of the
owner. Ex Parte Smith, 645 S.W.2d 310, 311 (Tex.Cr.App. 1983). Since appellant does not
challenge the jury's finding as to the element of appropriation, we first consider whether the
evidence is factually sufficient to allow a jury to conclude the $53,402.55 was taken without
the owner's effective consent. 

 After being informed the check would not clear the bank because of insufficient funds,
Myers accepted appellant's check and agreed not to deposit it until the Friday following the
sale. Due to appellant's inability to procure sufficient funds, the check was returned to the
Auction without payment. When appellant contacted Myers and explained the situation,
Myers agreed to hold the check once more. The check was never presented for payment
again. Myers testified to the handling of the matter as follows:

 Q. And you agreed with Mr. Harmon that you would hold his check when he
paid you for those cattle; is that correct?


 A. Yes, until Friday.


 Q. And then Mr. Harmon contacted you, and you agreed to hold the check
longer; is that correct?


 A. When it was insufficient, yes, we held it again.



However, the State does not contend the Auction allowed appellant to take possession of
the cattle before he wrote the check payable to the Auction. (4)

 The State does not present any evidence disputing the fact that Myers agreed to hold
the check for a second time. Furthermore, we find nothing in the record suggesting Myers
made any attempt to collect on the check once it was returned for insufficient funds. To the
contrary, according to the record, demand for payment was not made until after the parties'
business relationship had ceased.

 In support of its argument, the State references the following question asked of Myers
on direct examination:


 Now, one of the things that we have to ask you is if you gave Mr.
Harmon your consent to take your money by giving you this check. Did
you tell him it was okay to give you a check that was no good?



 No, sir, I didn't.


 

 Although this testimony may be sufficient to overcome a no evidence challenge to the
lack of consent requirement, a question we need not decide, other testimony shows Myers
did consent. After being informed by appellant that the check would not clear, he agreed
to accept the check and hold it until Friday. More important, we find the State's focus on
consent in their brief is misplaced. Regardless of whether Myers consented to being issued
a bad check, the check was accepted, and when the check was presented for payment and
returned as insufficient, he consented to appellant's actions by agreeing to continue to hold
the check and never presenting it for payment again. 

 The statutory presumption of intent provided in section 31.06(a) is not controlling here
because the evidence is uncontradicted that the Auction allowed appellant to take
possession of the cattle before he wrote the check. Moreover, the State does not argue and
the evidence does not show that Myers's consent was induced by any form of deception or
coercion. Given the established custom and dealing between Myers and appellant, and
viewing the evidence in a neutral light, we conclude the jury's finding of the absence of
Myers's effective consent was not rationally justified beyond a reasonable doubt. Lacking
evidence of the element of "without the owner's effective consent," no jury would be
rationally justified in finding appellant guilty of theft beyond a reasonable doubt. Appellant's
sole point of error is sustained. 

 Accordingly, we reverse the judgment and remand the cause to the trial court for a
new trial.


 Don H. Reavis

 Justice

Do not publish. 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Myers explained that the Federal Packers and Stockyards Act requires the custodial
account be fully reimbursed and balanced within seven days following the sale date;
however, no expert testimony was offered regarding the Act. But cf. Blackfoot Livestock
Comm'n v. Dept. of Agric., 810 F.2d 916, 921 (9th Cir. 1987) (holding that "[t]he Act
requires all auction transactions to be closed at the end of the next business day.").
3. There is some evidence in the record appellant attempted to sell the purchased
cattle at a livestock auction in Clovis, New Mexico, intending to use the proceeds to cover
the check held by Myers. Apparently, he was unable to do so as the cattle were
confiscated for undisclosed reasons by the New Mexico Livestock Board. 
4. According to State's Exhibit 1, the check dated October 14, 2002, in the amount of
$53,402.55 was made payable to Muleshoe Livestock Auction, Inc., and indorsed "For
deposit only." At the time of trial, a "NSF" notation appeared on the face of the check, but
it bore no endorsement provisions making it payable to Clayton Myers or otherwise.