NO. 07-03-0466-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 25, 2005

_____

JAMES THOMAS HARMON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 287TH DISTRICT COURT OF BAILEY COUNTY;

NO. 2193; HONORABLE GORDON H. GREEN, JUDGE

_____

Before REAVIS and CAMPBELL, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Following a plea of not guilty, appellant James Thomas Harmon was convicted by

a jury of felony theft and sentenced to five years confinement, $53,402.55 in restitution, and

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

a $10,000 fine.  By a single point of error, appellant contends the State's evidence is factually insufficient to support his conviction.  We reverse and remand.

Appellant is a livestock dealer who purchases cattle and resells them for profit.  He purchases cattle from various livestock auctions which, for a commission, provide a market for sellers and the labor and services necessary to facilitate a sale.

Over the course of several years, appellant routinely purchased large numbers of cattle from the Muleshoe Livestock Auction.  Clayton Myers, President and part owner of the Auction and Jamie Myers, a bookkeeper, testified to the operations and business practices of the auction company.  The Auction, which holds a sale every Saturday, acts as a seller's agent and the cattle to be sold remain property of the seller until a buyer is located.  When a buyer is declared the high bidder, he becomes the owner of the cattle and is obligated to pay the Auction the purchase price indicated by his bid.  When received, the buyer's payment is placed into a custodial account from which the Auction issues the seller a check for the amount of the sale, minus a commission and fees.  The seller is allowed to pick up this check at any time following the sale, even if the buyer has not yet paid for the cattle.  When a check is issued to a seller prior to a buyer making payment, the Auction becomes liable for the unpaid balance in the account and is responsible for collecting payment from the buyer.

2

Depending on the situation, buyers may pay for cattle either on sale day, upon taking possession of the cattle, or any other time prior to the next week's sale.[2] Myers testified although the Auction preferred appellant pay for his cattle on the Saturday of purchase, this did not always occur. He testified, on many occasions, appellant did pay for his cattle on the Saturday of the sale or upon him taking physical possession of the cattle. However, at other times, appellant was allowed to pay for his cattle several days after they had been removed from the Auction yard. There were also instances when appellant paid with a check shortly after purchase but would request the Auction hold the check until he was able to procure sufficient funds to cover the amount. In such instances, appellant would attempt to resell the cattle and use the proceeds to reimburse the auction for the purchase price. Even though this practice occasionally resulted in some of appellant's checks being returned for insufficient funds, Myers testified "we made out just fine," and "he always made them good."

On Saturday, October 12, 2002, appellant was declared the high bidder on 218 head of cattle at the Muleshoe Auction. As was custom, the Auction issued a check to the seller from the custodial account shortly following the sale. That evening or Sunday, with the Auction's permission, appellant removed the cattle from the Auction yard. On Monday,

---

[2]Myers explained that the Federal Packers and Stockyards Act requires the custodial account be fully reimbursed and balanced within seven days following the sale date; however, no expert testimony was offered regarding the Act. *But cf.* Blackfoot Livestock Comm'n v. Dept. of Agric., 810 F.2d 916, 921 (9th Cir. 1987) (holding that "[t]he Act requires all auction transactions to be closed at the end of the next business day.").

3

October 14, appellant wrote a check payable to Muleshoe Livestock Auction, Inc. for the purchase price in the amount of $53,402.55. However, appellant asked Myers to hold the check until the following Friday due to insufficient funds in his account. Myers agreed and did not deposit the check. Appellant was unable to sell the cattle or otherwise obtain funds sufficient to cover the amount of the check.[3] The Auction deposited appellant's check on Friday, October 18, and it was presented for payment at appellant's bank on October 21. Appellant's bank immediately returned the check for insufficient funds.

When appellant discovered the check had been returned, he contacted Myers and explained he was having difficulty selling the cattle. He asked Myers if he would withhold from depositing the check again, and Myers agreed. Myers and appellant continued to do business together until it became clear Myers would not be able to recover the amount of the check. However, Myers continued to hold appellant's check and did not present it to the bank for payment again. In February 2003, appellant was charged with felony theft of the $53,402.55. After a jury trial, he was found guilty and sentenced to five years confinement, $53,402.55 in restitution, and a $10,000 fine.

By his sole point of error, appellant contends the State's evidence pertaining to the consent element of theft is factually insufficient to support his conviction. We agree.

---

[3]There is some evidence in the record appellant attempted to sell the purchased cattle at a livestock auction in Clovis, New Mexico, intending to use the proceeds to cover the check held by Myers. Apparently, he was unable to do so as the cattle were confiscated for undisclosed reasons by the New Mexico Livestock Board.

As material here, the trial court instructed the jury that:

Appropriation of property is unlawful if it is without the owner's effective consent;

"Consent" means assent in fact, whether express or apparent;

"Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by deception; and

Among other things, the jury was charged that a finding of guilty must be based upon their finding that the cattle were taken "without the effective consent of the owner."

Appellant does not present any charge error.

## Standard of Review

When reviewing a factual sufficiency claim, we must view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex.Cr.App. 1996). We must determine, considering all of the evidence in a neutral light, whether the jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Cr.App. 2004). However, we must give deference to the jury verdict and their determinations involving the credibility of witnesses. Clewis, 922 S.W.2d at 135 (holding "courts 'are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable'") (citing Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986)).

There are two ways evidence may be insufficient. *Zuniga*, 144 S.W.3d at 484. First, evidence supporting the verdict may be too weak to support a guilty verdict beyond a reasonable doubt. *Id.* Second, there may be evidence supporting the verdict and evidence contrary to the verdict. Evidence is factually insufficient if, when weighing all the evidence, the contrary evidence is so strong that the beyond-a-reasonable-doubt standard could not have been met. *Id.* at 485. Under this standard, evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. *Id.*

**Analysis**

Section 31.03 of the Penal Code provides that a person commits the offense of theft if (1) he appropriates property, (2) without the owner's effective consent, and (3) with intent to deprive the owner. Tex. Pen. Code Ann. § 31.03(a)-(b) (Vernon Supp. 2004-05). An owner's consent is not effective if induced by deception or coercion. *Id.* at § 31.01(3)(a). Indeed, the *sine qua non* of the offense of theft is lack of effective consent on the part of the owner. Ex Parte Smith, 645 S.W.2d 310, 311 (Tex.Cr.App. 1983). Since appellant does not challenge the jury's finding as to the element of appropriation, we first consider whether the evidence is factually sufficient to allow a jury to conclude the $53,402.55 was taken without the owner's effective consent.

After being informed the check would not clear the bank because of insufficient funds, Myers accepted appellant's check and agreed not to deposit it until the Friday following the

6

sale. Due to appellant's inability to procure sufficient funds, the check was returned to the Auction without payment. When appellant contacted Myers and explained the situation, Myers agreed to hold the check once more. The check was never presented for payment again. Myers testified to the handling of the matter as follows:

> Q. And you agreed with Mr. Harmon that you would hold his check when he paid you for those cattle; is that correct?
>
> A. Yes, until Friday.
>
> Q. And then Mr. Harmon contacted you, and you agreed to hold the check longer; is that correct?
>
> A. When it was insufficient, yes, we held it again.

However, the State does not contend the Auction allowed appellant to take possession of the cattle before he wrote the check payable to the Auction.[4]

The State does not present any evidence disputing the fact that Myers agreed to hold the check for a second time. Furthermore, we find nothing in the record suggesting Myers made any attempt to collect on the check once it was returned for insufficient funds. To the contrary, according to the record, demand for payment was not made until after the parties' business relationship had ceased.

---

[4]According to State's Exhibit 1, the check dated October 14, 2002, in the amount of $53,402.55 was made payable to Muleshoe Livestock Auction, Inc., and indorsed "For deposit only." At the time of trial, a "NSF" notation appeared on the face of the check, but it bore no endorsement provisions making it payable to Clayton Myers or otherwise.

In support of its argument, the State references the following question asked of Myers on direct examination:

Q.    Now, one of the things that we have to ask you is if you gave Mr. Harmon your consent to take your money by giving you this check. Did you tell him it was okay to give you a check that was no good?

A.    No, sir, I didn't.

Although this testimony may be sufficient to overcome a no evidence challenge to the lack of consent requirement, a question we need not decide, other testimony shows Myers did consent.  After being informed by appellant that the check would not clear, he agreed to accept the check and hold it until Friday.  More important, we find the State's focus on consent in their brief is misplaced.  Regardless of whether Myers consented to being issued a bad check, the check was accepted, and when the check was presented for payment and returned as insufficient, he consented to appellant's actions by agreeing to continue to hold the check and never presenting it for payment again.

The statutory presumption of intent provided in section 31.06(a) is not controlling here because the evidence is uncontradicted that the Auction allowed appellant to take possession of the cattle before he wrote the check.  Moreover, the State does not argue and the evidence does not show that Myers's consent was induced by any form of deception or coercion.  Given the established custom and dealing between Myers and appellant, and viewing the evidence in a neutral light, we conclude the jury's finding of the absence of Myers's effective consent was not rationally justified beyond a reasonable doubt.  Lacking

evidence of the element of "without the owner's effective consent," no jury would be rationally justified in finding appellant guilty of theft beyond a reasonable doubt. Appellant's sole point of error is sustained.

Accordingly, we reverse the judgment and remand the cause to the trial court for a new trial.

Don H. Reavis
Justice

Do not publish.

9